William P. MITCHELL, David L. Beasley, Otis Pinkard, Wright L. Lassiter, Jr., Lucius A. Hayden and William C. Allen, Plaintiffs,

United States of America, Plaintiff and Amicus Curiae,

v.

Edgar JOHNSON, E. P. Livingston, and H. P. Wilson, individually and as members of the Jury Commission of Macon County, Alabama, and Mrs. Grace P. Youngblood Hall, individually and as Clerk of the Jury Commission of Macon County, Alabama, Defendants.

Civ. A. No. 649–E.

United States District Court
M. D. Alabama, E. D.
Jan. 18, 1966.

118

John Doar, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., Ben Hardeman, U. S. Atty., Montgomery, Ala., for plaintiff and amicus curiae.

Gray & Seay, Montgomery, Ala., and Jack Greenberg and Michael Meltsner, New York City, for plaintiffs.

Richmond M. Flowers, Atty. Gen., Leslie Hall, Asst. Atty. Gen., State of Ala-

bama, Montgomery, Ala., and Tom F. Young, Circuit Sol., Fifth Judicial Circuit of Alabama, Alexander City, Ala., for defendants.

JOHNSON, District Judge.

This action was tried to the Court without the intervention of a jury, on the issues made by the pleadings and proof. Upon consideration of the evidence, consisting of the oral testimony of several witnesses, the testimony by deposition of several witnesses, together with the exhibits, and the stipulations of the parties dictated into the record, this Court now proceeds to make and enter in this memorandum opinion, as authorized by Rule 52, Federal Rules of Civil Procedure, the appropriate findings of fact and conclusions of law.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1443, and the action is authorized by 42 U.S.C. § 1983, with the plaintiffs, Negro citizens who are residents of Macon County, Alabama, bringing this action in their own behalf and on behalf of others similarly situated, pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure. The plaintiff-intervenor is the United States of America; its standing to intervene is established by 42 U.S.C. § 2000h–2 and by Rule 24(b) of the Federal Rules of Civil Procedure. The defendants are the members and the clerk of the jury commission of Macon County, Alabama. The plaintiffs, as Negro citizens of Macon County, Alabama, in their own behalf and on behalf of others similarly situated in Macon County, Alabama, seek a preliminary and permanent injunction enjoining and restraining the defendants from continuing to exclude, limit and restrict qualified Negroes from service on civil and criminal juries in Macon County, Alabama, on account of their race, and from utilizing any names presently contained in the jury box or on the jury rolls for the selection of jurors in any court in Macon County until such time as the names of Negroes qualified for jury duty therein shall have been placed in such jury boxes and on such jury rolls without exclusion, limitation or restriction on account of race.

Each county in Alabama has a jury commission composed of three members appointed by the Governor.[1] The commissioners must be qualified electors of the county and "reputed for their fairness, impartiality, integrity and good judgment."[2] The defendant members of the jury commission are required by the Alabama law to place on the jury roll "the names of all male citizens of the county who are generally reputed to be honest and intelligent men and are esteemed in the community for their integrity, good character and sound judgment * * *."[3] The clerk of the jury commission is directed by law to "obtain the name of every male citizen of the county over twenty-one and under sixty-five years of age and their occupation, place of residence and place of business * * *."[4] The jury commission is required to maintain a jury roll containing the name of "every male citizen living in the county who possessed the qualifications herein prescribed and who is not exempted by law from serving on juries."[5] The names on the jury roll must also be printed on separate cards which are placed in a jury box.[6] It is the duty of the commission to see that "the name of every person possessing the qualifications prescribed [by the law of Alabama] * * * to serve as a juror and not exempted by law from jury duty, is placed on the jury roll and in the jury

1. Title 30, §§ 8, 9 and 10, Code of Alabama.

2. Title 30, § 9, Code of Alabama.

3. Title 30, § 21, Code of Alabama.

4. Title 30, § 18, Code of Alabama.

5. Title 30, § 20, Code of Alabama. However, it is not necessary, according to the law of Alabama, that the name of *every qualified* person be placed on the roll. Fikes v. State, 263 Ala. 89, 81 So.2d 303.

6. Title 30, § 20, Code of Alabama.

box." [7] The Alabama law says that to accomplish this the jury commission shall require the clerk to scan the registration lists, the lists returned to the tax assessor, any city directories, telephone directories, and any and every other source of information, and to visit every precinct at least once a year.[8]

The regular procedure for drawing the jury venire is for the judge to draw from the jury box in open court the names of either the grand or petit jurors (or both) to serve during the term needed. The clerk makes a list of the names drawn, and this venire containing these names is issued to the sheriff who summons the persons listed to appear and serve as jurors.[9] In Alabama trial juries in both civil and criminal cases are selected by the "struck jury" method.[10]

The evidence in this case reflects that prior to June 3, 1964, the date that this lawsuit was filed, the jury commissioners of Macon County, Alabama, used a method of collecting names for the jury roll and jury box that relied primarily on their personal contacts in the community and, to some limited extent, on sources such as the voter registration list, the Tuskegee city directory and the telephone directory. The evidence is clear that the commissioners had not followed the procedure required by the Alabama state law.[11] The evidence further reflects that according to the seventeenth decennial census of the United States, taken in 1960, the white male population of Macon County 21 years of age and over was 1,365, and the Negro male population of the county 21 years of age and over was 6,234. There were 5,097 Negro males and 1,100 white males between the ages of 21 and 65. Despite this population ratio of "jury-service" qualified Negroes to "jury-service" quali-

fied whites—insofar as sex and age is concerned—prior to the filing of this case the number of Negro jurors called on a civil or criminal jury venire or on a grand jury panel in Macon County, Alabama, was never more than one to seven percent of the total number called.

After this case was filed, the defendants on October 12, 1964, filed with this Court a copy of an order entered on August 5, 1964, by the Circuit Court of Macon County, Alabama. This order was executed by the three circuit court judges with jurisdiction over Macon County, Alabama, and the effect of the order was to order the members of the jury commission of Macon County, Alabama, "to promptly empty and refill the Jury Box of Macon County, Alabama, with and place on the Jury Roll of said County, the names of every person possessing the qualifications prescribed [by Alabama law]." After a copy of this Circuit Court order was filed with this Court, the defendants, through their attorneys, represented to this Court that the jury commissioners were in the process of carrying out this order of the Circuit Court and that the jury box would be completely refilled not later than January, 1965, in accordance with the law of the State of Alabama and the requirements of the Constitution of the United States. It was stipulated between the parties that this Court delay the hearing in this case in order to afford the jury commissioners of Macon County, Alabama, an opportunity to empty and refill the jury box in compliance with the order of the state court.

The evidence clearly reflected that even though there were more than four times as many Negro males as white in Macon County between the ages of 21 and 65, there were over 550 whites, but only about 250 Negroes on the jury roll at the

---

7. Title 30, § 24, Code of Alabama.

8. Title 30, § 24, Code of Alabama.

9. Title 30, § 30, Code of Alabama.

10. Title 30, §§ 36, 37, 38, 39, 40 and 41, Code of Alabama.

11. The ultimate issue in this case is, of course, whether or not there has been a

violation of the federal law. Whether the state requirements have been followed, however, is relevant in determining the relief, if any, to be granted and the manner in which such relief is to be secured to the plaintiffs and the members of their class.

time this lawsuit was filed. Sometime during the year 1964 (the evidence is not clear as to whether the action was taken before or after this case was filed), the names of 97 Negroes were added to the jury roll. The evidence further reflects that after the order of the circuit judges was entered on August 5, 1964, the jury commissioners and their clerk purged the old jury roll consisting of approximately 800 names, with the racial ratio as above-indicated, of persons who had left the county or who had reached the age of over 65. The remaining names were put on the new jury roll. Next, the jury commissioners added the names of approximately 156 Negroes from a list submitted to them by one prominent Negro citizen. Therefore, at the time of this hearing, and after the jury commissioners had emptied and refilled the jury box and had recompiled the jury roll in Macon County, the total number of names on the new roll was 1,138. Of this total number, 732 were white and 406 were Negro. Percentagewise, those whose names were placed on this jury roll represented approximately 55% of the eligible white population and approximately 9% of the eligible Negro population. In compiling this new roll, the defendants again did not follow the procedure outlined above, as required by the Alabama statutes. The clerk of the commission testified that she did not compile a list of all males from 21 to 65 as required by Title 30, § 18 of the Alabama Code, and, furthermore, that she did not make any effort to do so. Neither did the clerk go out in the county to attempt to gather names as required by the statute; the total number of names collected by the clerk for the assistance of the commissioners as contemplated by the appropriate Alabama statute, was not more than a dozen, none of which were Negroes' names.

The plaintiffs in this civil action assert the right of Negroes, collectively, to be free from racial discrimination in jury selection procedures. They invoke the constitutional principle that systematic exclusion for the purposeful discrimination against Negroes in selecting persons qualified for jury service involves arbitrary state action directly contrary to, and in violation of, the equal protection and due process clauses of the Fourteenth Amendment. The rule of law that Negroes may not systematically be excluded from the opportunity to serve on civil and criminal juries, grand and petit, in the state and federal courts has several basic aspects. The qualified Negro citizen has a right not to be denied participation in the democratic institution by which all citizens become most directly involved in the administration of justice. When Negroes are excluded from jury service because of their color, the action of the state "is practically a brand upon them, affixed by the law, an assertion of their inferiority * * *." Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664. As the Supreme Court stated in Strauder v. West Virginia:

> "The very idea of a jury is that it is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; * * *."

The evidence in this case, without any dispute, clearly reflects wide disproportions between the number of qualified Negro jurors in Macon County and the number of names of Negroes placed on the jury roll and in the jury box by the defendants. This proof, without more, requires an inference of systematic exclusion on racial grounds; this inference, in the absence of some satisfactory explanation, is sufficient to show that the plaintiffs have been denied the constitutional rights they assert. Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76; Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77; Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; United States ex rel. Seals v. Wiman, 5 Cir., 304 F.2d 53; United States ex rel. Goldsby v. Harpole, 5 Cir., 263 F.2d 71.

▆ This Court recognizes that there can be no precise formula for determining when there has been an adequate number as opposed to a token number of names of qualified Negro citizens on the jury roll and in the jury box, but from the evidence in this case it is clear that the jury commissioners in Macon County, Alabama, have failed to discharge the clear, affirmative duty that rests upon them and the other public officials charged with seeing that there is a nonracial jury selection. This affirmative duty has been expressed by the Supreme Court of the United States in Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244, as follows:

> "The Jury Commissioners, and the other officials responsible for the selection of this panel, were under a constitutional duty to follow a procedure—'a course of conduct'—which would not 'operate to discriminate in the selection of jurors on racial grounds.' Hill v. State of Texas, 316 U.S. 400, 404, 62 S.Ct. 1159, 1161, 86 L.Ed. 1559 (1942)."

The defendants in this case have made no valid explanation concerning why almost all eligible whites in Macon County, Alabama, have their names on the jury roll and in the jury box, but only one out of approximately every twelve members of the Negro race has his name on the jury roll and in the jury box.[12] The law requires, under such circumstances, that the defendants offer a reasonable and plausible explanation concerning why the proportion of Negroes on the jury roll averages only approximately one-tenth the proportion of eligible Negroes in the population. Speller v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; this the defendants have failed to do. As a matter of fact, the defendants made no effort in this case to offer proof that Negro male citizens of Macon County, Alabama, are any less qualified for jury service than whites.

Not only did the defendants fail to carry their burden of explaining the small number of Negroes in proportion to the number of whites on the jury roll and in the jury box, but the evidence reflected that the selection procedures as followed by the defendants were in clear violation of the state statutes. The procedures followed by the defendants have had a natural tendency to restrict Negro participation in the jury system in Macon County, Alabama.

▆ As stated above, this Court recognizes that the mere failure to adhere to the Alabama statutes does not in and of itself constitute a violation of the plaintiffs' federally-guaranteed constitutional rights; however, the purpose of the Alabama statutes is to insure at least a reasonable approximation to the requirements that jury venires include all qualified persons, and, hence, represent a cross-section of the community, with no significant groups being excluded without justifiable reasons; therefore, the procedures outlined by the Alabama statutes can and do serve in this case as a standard by which the actions of the jury commissioners can and should be judged. Their failure to adhere, to any substantial degree, to the requirements of the Alabama law in their selection procedures explains, to some extent, the imbalance in the jury rolls in Macon County, Alabama. Had the clerk of the jury commission obtained the names of all male citizens in the county between the ages of 21 and 65, as required by the Alabama statute, together with their occupations, residences and places of business, and turned this information over to the members of the jury commission, the commission, by using this list and by other information collected from the voter registration rolls, the city directories, the telephone directories and by visiting the precincts in the county as they are required to do, could very easily have made a roll containing the names of citizens of Macon County which would

12. When the evidence is viewed as of the time of the filing of this lawsuit the discrimination was considerably more apparent, in that 156 names of Negroes have been added to the roll since June, 1964.

have met the Alabama statutory requirements. The sole purpose of these requirements is to insure that the jury commissioners will have as complete a list as possible of names, compiled on an objective basis, from which to select qualified jurors. The commissioners in this case, all white, relied almost entirely on personal knowledge and on personal contacts. It is not surprising, therefore, that a substantial majority of white persons in the community were selected while more than 90% of the potential eligible Negroes have not even been considered for jury duty. This means, very simply, that the jury commissioners of Macon County have failed to perform their duty requiring them to familarize themselves with the qualifications of eligible citizens of the county without regard to their race. Cassel v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159; Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84.

■■ Moreover, the practice followed by the jury commissioners in Macon County of replacing names in the jury box that had been drawn, after a given period, resulted in the jury box never being exhausted; this practice resulted in the same white jurors being used repeatedly and eliminated the necessity on the part of the jury commissioners to compile a completely new jury roll. The clear purpose of Section 23, Title 30, Code of Alabama, is to insure that the same persons will not be used for jury duty over and over again. The procedure followed by the defendants in this case, however, served to bring about the opposite results. When new names were added by the commissioners, they were added only in small numbers from the same sources that had been used previously. Even when the commission was ordered by the circuit judges to compile a new roll and to refill the box, they did so in such a way as to perpetuate the old roll. Instead of beginning anew and at least attempting to make a list of all potentially eligible persons, they simply took the old roll, eliminated a limited number of persons who were no longer qualified to serve and used about 800 of the old names, plus approximately 300 more. As a result, the percentage of whites climbed to 66%, whereas the percentage of eligible Negroes whose names were in the box, went from 5% to approximately 8%. The defendants and their attorneys evidently believe that by these token actions they can satisfy the requirements of the Fourteenth Amendment to the Constitution of the United States. However, systematic inclusion on the basis of race where it results in only token representation is as much a denial of constitutional rights as is complete and systematic exclusion. Collins v. Walker, 5 Cir., 335 F.2d 417. Unconstitutional jury selection methods are usually brought before courts prior to trial in order to quash a particular panel or venire in a particular case. This case is one of the first civil actions brought to remedy systematic exclusion of Negroes from jury service generally. There is no question that under Section 1983, Title 42, United States Code, these plaintiffs, under the evidence in this case, are entitled to the relief they seek and are entitled to have the defendants adopt procedures that will insure that they and all other qualified members of their class in Macon County serve on juries.[13]

■■ The relief to be afforded in this case will involve not only the issuance of a prohibitory injunction, but an injunction requiring immediate affirmative action by the jury commissioners by their emptying the Macon County jury box, abandoning the present Macon County jury roll without any further use of either, and by their compiling a jury roll and refilling the jury box in strict accordance with the law of Alabama and the constitutional principles herein set

13. An action such as the plaintiffs have brought here was suggested by Mr. Justice Jackson in his dissent in Cassell v. State of Texas, supra, as a "direct and effective" means to eliminate unconstitutional discrimination.

forth.[14] This Court recognizes that it does not sit to enforce the law of the State of Alabama, but where the constitutional guaranties as set forth by the Constitution of the United States have been violated to the extent that the defendants have violated them in this case, it is appropriate, in fashioning relief from these violations, for the Court, to the extent possible, to let its decree recognize the validity of the law of the State of Alabama as much as is practicable and consistent with the object of eliminating discrimination in the Macon County jury selection system. In remedying this wrong, the defendants are cautioned that if they apply Alabama's qualifications for jury service—particularly that qualification relating to good character and sound judgment and that qualification concerning the requirement that prospective jurors be able to read English—these qualification requirements must be imposed fairly and objectively and administered to all regardless of race, in a nondiscriminatory manner. This Court recognizes the practical difficulties which will be faced by the jury commission in putting into the jury box the name of every qualified juror on the comprehensive list to be prepared by the jury clerk.[15] This Court further recognizes that the law of Alabama as stated in Fikes v. State, supra, does not require, literally, that *every* qualified person's name be placed on the rolls or in the box. However, the law does require that the jury commissioners do not place so few names in the jury box as not to obtain a full cross-section of the county. In this connection, there should be no less than 1000 names placed in the jury box at each refilling.

The defendants in this case will experience no difficulty in complying with the law and no difficulty with this Court if they understand and heed the mandate of the law as pronounced by the United States Court of Appeals for the Fifth Circuit in Collins v. Walker, supra, when that Court, speaking through Circuit Judges Rives, stated:

"A Negro is entitled to the equal protection of the laws, no less and no more. He stands equal before the law, and is viewed by the law as a person, not as a Negro. In the historic language of the elder Mr. Justice Harlan:

"'There is no caste here. Our constitution is color-blind, and neither knows nor tolerates classes among citizens. In respect of civil rights, all citizens are equal before the law. The humblest is the peer of the most powerful. The law regards man as man, and takes no account of his surroundings or of his color when his civil rights as guaranteed by the supreme law of the land are involved.'

Plessy v. Ferguson, 1896, 163 U.S. 537, 559, 16 S.Ct. 1138, 1146, 41 L.Ed. 256."

Failure on the part of the defendants to comply immediately and in good faith with the requirements of this opinion and order will necessitate the appointment by this Court of a master or panel of masters to recompile the jury roll and to empty and refill the Macon County jury box. This action, if it becomes necessary, would be only for the purpose of having the requirements of the law fulfilled. Since the defendants are already charged with this duty—by both the Alabama law and the requirements of the United States Constitution—such action by this Court should not be necessary.

A formal order will be entered in accordance with the foregoing.

---

14. The use of mandatory injunctions, where necessary to afford relief, as in this case, has been approved by the United States Court of Appeals for the Fifth Circuit in

State of Alabama v. United States (1962), 304 F.2d 583.

15. Fikes v. State, supra.