[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 3 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 4 
Anthony Jerome Smith was charged in a two count indictment with rape and carnal knowledge of a girl over twelve and under sixteen years of age. A jury found him guilty of rape and sentenced him to fifteen years' imprisonment. Both at trial and on appeal, Smith is represented by retained counsel of his own choosing. Though Smith was nineteen years of age at the time of the commission of the crime, application for treatment as a youthful offender was denied.
On June 3, 1975, Ellen was fifteen years old. Her sister, Barbara, was fourteen. Ellen and Barbara and their stepbrothers, Alan, fourteen, and Donald Lee, eighteen, had run away from their home in Fort Payne, Alabama, and come to Limestone County where they pitched their tent in a cotton field.
Though the sufficiency of the evidence is challenged in a motion for new trial, there being no motion to exclude the state's evidence or request for the affirmative charge, we do not feel compelled to detail all the evidence presented. Ellen testified that Smith and his two companions, Charles Hardy and John Lockett, each had sexual intercourse with her and that these acts were accomplished by force and fear and against her consent. She made a complaint of having been raped and the medical and physical evidence was consistent with recent sexual assault. Ellen's testimony alone constituted sufficient evidence, if believed by the jury, to sustain the conviction.Boddie v. State, 52 Ala. 395 (1875); Herndon v. State,2 Ala. App. 118, 56 So. 85 (1911). In addition, her testimony was corroborated by that of her stepbrother, Alan. The state also introduced a written statement in which Smith admitted having had sexual intercourse with Ellen but maintained that it was with her consent.
At trial Smith denied any sexual act with Ellen and stated that he never even touched her. Under his testimony neither he nor Hardy and Lockett had anything to do with Barbara and Ellen.
 I
Initially Smith contends that his motion to quash the indictment should have been granted because the jury commission (A) failed to comply with Alabama law in regard to filling the jury box and (B) excluded or omitted large numbers of legally qualified citizens, and placed so few names in the jury box as not to obtain a full cross-section of the county.
 A.
Specifically Smith contends that the county jury commission failed to comply with Alabama law in filling the jury box (1) because its members did not meet annually between August 1st and December 20th as spelled out in Section 12-16-42, Code of Alabama 1975, and (2) because the clerk of the jury commission did not personally visit every precinct at least once a year to enable the jury commission to properly perform its duties under Section 12-16-41 (1975).
Prior to Smith's trial two hearings were conducted to determine the composition of the jury roll for Limestone County and the procedure followed by the jury commission of that county in compiling the jury roll. There is no question, based on the testimony of Mrs. Rogers, Clerk of the Jury Commission, and Mr. Johnston, President of the Jury Commission, that the commission did meet annually to discharge the major portion of their duties. However, instead of meeting between August 1st and December 20th, the commission regularly met in January and for the year 1974 completed their duties in March of that year. Mrs. Rogers *Page 5 
testified that the first of the year meetings were customary for Limestone County and were held at that time according to the instructions of the circuit judge for that county.
The evidence further reveals that between January 10, 1975, and May 12, 1975, every card in the jury box was taken out and analyzed by the jury commission to ascertain whether or not each particular person that had been indexed was living at the present address indicated. After completing this duty the commission worked the remainder of the summer adding 751 names and removing twelve to bring the total on the jury roll to 2,902. This task was completed on September 26, 1975, and represented a concerted effort to enlarge the jury roll and simultaneously increase the percentages of blacks, women and young people between the ages of 21 and 30 on the jury roll.
Section 12-16-42 (1975) states that in order to compile the jury roll
 "The jury commission shall meet in the courthouse at the county seat of the several counties annually, between the first day of August and the twentieth day of December."
Generally, the statutes prescribing the time for selecting the jury roll are held to be merely directory and, "if the list is at a later date properly selected and returned, the delay furnishes no ground of objection to the panel". 50 C.J.S. Juries § 159b.
The purpose of Section 12-16-42 is to "protect litigants and to insure a fair trial by an impartial jury". State ex rel.Gregg v. Maples, 286 Ala. 274, 278, 239 So.2d 198, 201 (1970). We fail to see how the jury commission's meeting annually beginning in January instead of August could in any manner fail to protect a defendant or deprive him of a fair trial. Accordingly we reject Smith's contention that because the meetings were not held between August 1st and December 20th of each year, that, as a matter of law, the duties performed by the Limestone County Jury Commission must be declared void due to noncompliance with statutory provisions. Such an interpretation as Smith advocates would pervert form over substance and result in an interpretation of Section 12-16-42 inconsistent with its basic import of safeguarding the administration of justice. While it is incumbent upon the jury commission to meet annually to conduct its business, the reference in Section 12-16-42 that the meetings occur between August 1st and December 20th must be construed as directory only and not mandatory in nature.
Smith also takes issue with the performance of the jury commission in light of Alabama Code Section 12-16-41 (1975) which states that the jury commission, in addition, to requiring the clerk of the commission to scan the registration lists, tax assessor's records, city directories, et cetera, is to require the clerk "to visit every precinct at least once a year to enable the jury commission to properly perform the duties required of it. . . ." The evidence is unequivocal that Mrs. Rogers did not visit each of the precincts, but instead, Mr. Johnston, the president of the commission, carried out this assignment himself.
Again, this court is persuaded that the instruction in Alabama Code Section 12-16-41 (1975) that the clerk of the jury commission visit every precinct each year is directory and not mandatory as to who must perform this duty. It is mandatory that each precinct be visited annually so that the jury commission is enabled to obtain comprehensive information about those persons qualified to serve as jurors and to insure that no person is systematically eliminated simply on the basis of that person's residence. This is to prevent the possibility of the jury commissioners selecting only those residents of the county that they have personal knowledge of and who, in their opinion, are competent to serve at the time the jury list is prepared. Certainly a jury list containing names selected only from certain precincts of the county to the exclusion of others is fatally defective. Hanners v. State, 147 Ala. 27, 41 So. 973
(1906). Under our statute there are limits on who may visit each precinct to discharge this Code requirement. In Penn v.Eubanks, *Page 6 360 F. Supp. 699, 702 (M.D.Ala. 1973), the federal district court determined that those charged with the administration of jury selection machinery could not transfer to other segments of the community the responsibilities placed on them by law. The duties assigned to the jury commission and its clerk must be performed by the commission and clerk and should not be delegated to third parties. Here there was no unauthorized delegation of authority. While the jury commissioners may not delegate any of their statutorily imposed duties to any other person or persons, we see no reason why the commission or any one of its members may not assume some of the duties of the clerk of the jury commission.
It is clear that the clerk of the jury commission is an integral component of the commission and according to statute must work closely with the commission in executing the duties demanded by law. More specifically, by way of Alabama Code Section 12-16-39 (1975), the clerk is to discharge his responsibilities "under the direction of the jury commission", and by authority of Alabama Code Section 12-16-40 (1975) serves at the pleasure of the commission as the commission has absolute authority to discharge the clerk and employ another at any time. Therefore, since it was decided by the jury commission that Mr. Johnston, the president of the commission, would visit each precinct, Mrs. Rogers, as clerk, was acting "under the direction of the jury commission" and was in no way derelict in her responsibility of visiting every precinct each year to gather names. By the same token, since Mr. Johnston, under the authority of the commission, did, in fact, visit every precinct for the purpose of gathering names for the jury roll, the duty was performed. Therefore the trial court did not err in refusing to quash the indictment on the ground that the jury commission failed to comply with Alabama law in filling the jury box.
 B.
The appellant alleges that the jury commission omitted or excluded large numbers of legally qualified citizens from the jury roll and placed so few names in the jury box as not to obtain a full cross-section of the community.
In Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664
(1879), the United States Supreme Court held that the due process and equal protection clauses of the Fourteenth Amendment prohibit the statutory exclusion of persons from jury service solely because of their race or color. Thereafter, inNeal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1880), that Court ruled that the equality of protection secured by the Fourteenth Amendment forbids the discriminatory application of racially neutral jury selection statutes.
Since Strauder and Neal, the Supreme Court has consistently reiterated the constitutional requirement that both grand and petit juries must be drawn from a panel which represents a cross-section of the community. Castaneda v. Partida,430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); Taylor v. Louisiana,419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); Glasser v.United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942);Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940). At the same time and just as consistently, the Court has rejected the notion that proportional representation of races or community groups is required by the provisions of the Fourteenth Amendment. Swain v. Alabama, 380 U.S. 202,85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Hoyt v. Florida, 368 U.S. 57,82 S.Ct. 159, 7 L.Ed.2d 118 (1961); Cassell v. Texas,339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); Akins v. Texas,325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945).
The principle of cross-sectional representation requires that all eligible persons residing in the community be afforded an opportunity of being selected for jury service.
 "The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. This does not mean, of course, that every jury *Page 7 
must contain representatives of all economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury." Thiel v. Southern Pacific Co., 328 U.S. 217, 220, 66 S.Ct. 984, 985, 986, 90 L.Ed. 1181, 1184 (1946).
However only "distinct" community groups constituting a significant and identifiable segment of the overall population from which the jurors are drawn need be considered by the jury commissioners in choosing a representative jury panel.Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866
(1954); Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643,17 L.Ed.2d 599 (1967).
Despite criticism, Rabinowitz v. United States, 366 F.2d 34
(5th Cir. 1966), the "key man" system, under which jury commissioners solicit names for the jury list from certain designated "key men" in the community, enjoys widespread use today. Kuhn, Jury Discrimination: The Next Phase, 41 S.Calif.L.Rev. 235, 260-264 (1967). Because of its potential for abuse, the United States Supreme Court has developed two constitutionally grounded affirmative duties to be adhered to by the jury commissioners. See Sperlich Jaspovice,Statistical Decision Theory and the Selection of Grand Jurors:Testing for Discrimination in a Single Panel, 2 Hastings Const. L.Q. 75, 78 (1975). The first obligates the jury commissioners, as a constitutional duty of their office, to familiarize themselves with all the community's elements in which qualified jurors may be found so as to make certain that none is omitted from full and equal consideration for jury service. Cassell v.Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); Hill v.Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942); Smithv. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940);Brooks v. Beto, 366 F.2d 1 (5th Cir. 1966). The second requires that the jury commissioners refrain from following a course of conduct which, whether so intended or not, naturally tends to exclude any group of potential jurors from jury service. Averyv. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953);Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692
(1945); Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159,86 L.Ed. 1559 (1940); Davis v. Davis, 361 F.2d 770 (5th Cir. 1966);White v. Crook, 251 F. Supp. 401 (M.D.Ala. 1966).
While a challenge to the selection procedures employed in establishing a jury roll may assail the constitutional validity of the selection plan or statute, the usual challenge is to the manner in which a constitutional statute is applied.
 "The discriminatory application of racially neutral statutes can be attacked in three ways. The first entails a demonstration of discriminatory outcome of the selection procedure. Pursuant to this method the challenger has the burden of establishing a prima facie case by producing evidence which proves that there is a substantial disparity over time between the percentage of the cognizable community group on the jury roll or venire and that group's percentage in the relevant population. Once a prima facie case has been proven, the burden shifts to the state to justify the discrepancy. The second method involves a showing that discriminatory selection procedures have been indulged in by the selectors. Thus, evidence proving that the selectors have failed to take affirmative steps to comply with the two-fold constitutional duty imposed upon them and described above will allow the challenger to succeed. The actual outcome of the selection process is wholly inconsequential to the success or failure of this method. The third and final method requires a demonstration of *Page 8 
a combination of factors indicative of discrimination and may involve proof called for by the first and second methods, in addition to other evidence."
 Sperlich Jaspovice, Grand Juries, Grand Jurors and the Constitution, 1 Hastings Const. L.Q. 63, 80-81 (1974).
See also: Kuhn, supra; Comment, The Civil Petitioner's Right toRepresentative Grand Juries and a Statistical Method of ShowingDiscrimination in Jury Selection Cases Generally, 20 U.C.L.A. Law Rev. 581 (1973); Comment, Jury Discrimination in the South:A Remedy? 8 Colum. J.L. Soc. Prob. 589 (1972); Discriminatory Jury Selection, 9 Am.Jur. Proof of Facts 2d 407 (1976).
Though the discrimination must be "purposeful" or "systematic", proof of specific acts of discrimination or actual discriminatory intent on the part of the jury commissioners is not required. Purposeful discrimination may be inferred or presumed to have arisen from the fact of a continued lack of representation or from underrepresentation or tokenism. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532,24 L.Ed.2d 567 (1970); Swain v. Alabama, 380 U.S. 202,85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Patton v. Mississippi,332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Akins v. Texas,325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); Mitchell v. Johnson,250 F. Supp. 117 (M.D.Ala. 1966). A statistical showing of significant numerical disparity in representation will give rise to a finding of purposefulness. Avery, supra; Patton, supra; State ex rel. Gregg v. Maples, 286 Ala. 274,239 So.2d 198 (1970); Inter-Ocean Casualty Co. v. Banks, 32 Ala. App. 225,23 So.2d 874 (1945). Mindful of these guidelines we now undertake to treat the specific assertions of the appellant.
The facts show that the jury commission actually placed 2,163 names on the jury roll. This figure represents 5.1% of the total county population of 41,699. As the appellant recognizes, the requirement of Section 12-16-42, Code of Alabama 1975, that the jury commission place the name of every qualified, nonexempt person on the jury roll is permissive and not mandatory. The commission's failure to put the name of every qualified person on the jury roll is not a basis for quashing the indictment or a venire absent fraud or a denial of constitutional rights. Swain, supra; Carter v. Jury Commissionof Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549
(1970); Bokulich v. Jury Commission, 298 F. Supp. 181 (N.D.Ala. 1968); Mitchell v. Johnson, 250 F. Supp. 117 (M.D.Ala. 1966);White v. Crook, 251 F. Supp. 401 (M.D.Ala. 1966); Ex parteSeals, 271 Ala. 622, 126 So.2d 474, cert. denied, 366 U.S. 954,81 S.Ct. 1909, 6 L.Ed.2d 1246 (1961).
When Mrs. Rogers, the Clerk of the Jury Commission, was asked at the November 4, 1974, hearing how the commission obtained names to fill the jury roll she stated that the commission used the registered voters' list, the city directory, the telephone directory, the tax assessor's records; that she had written letters to approximately ten high school principals, fifty pastors of churches of both blacks and whites, and the personnel managers of the industrial plants in the area; that in all she had written approximately one hundred fifty letters; and that she had conducted personal interviews with some of the people being considered for the jury roll.
The use of the key man system has been upheld where effort was made to consult leaders from the significant population groups. Swain, supra; Billingsley v. Clayton, 359 F.2d 13 (5th Cir.), cert. denied, 385 U.S. 841, 87 S.Ct. 92, 17 L.Ed.2d 74
(1966). Here, black leaders were specifically contacted. In addition, the key man system was not used exclusively but in conjunction with several lists which would tend to ameliorate the drawbacks of the key man system.
There is absolutely no evidence that the commission or its clerk made any unauthorized effort to systematically limit or exclude any group, class, or person from the jury roll or employ any fraudulent practice in filling that roll. The appellant offered no evidence that either the key men did not represent all relevant segments of the population *Page 9 
or that the lists themselves were a product of discrimination and disproportionate in their representation. In short, this Court has not been furnished with sufficient information to conclude that the jury selection process and the manner in which it is executed in Limestone County is either purposefully or unintentionally discriminatory in its use of selection procedures.
The appellant further contends that there was no "substantial compliance" with the Alabama statutes because so few names were placed on the jury roll. This issue was addressed to some extent in Mitchell v. Johnson, 250 F. Supp. 117 (M.D.Ala. 1966) and State ex rel. Gregg v. Maples, 286 Ala. 274, 239 So.2d 198
(1970).
 "The purpose of §§ 18, 20 and 24 of Title 30 (§§ 12-16-39, 41 and 42, Code of Alabama 1975), is `to protect litigants and to insure a fair trial by an impartial jury'. And `substantial compliance with these requirements is necessary in order to safeguard the administration of justice'. Inter-Ocean Cas. Co. v. Banks, 32 Ala. App. 225, 227, 23 So.2d 874, 875." Gregg, 286 Ala. at 279, 239 So.2d at 201.
* * * * * *
 "(T)he mere failure to adhere to the Alabama statutes does not in and of itself constitute a violation of the plaintiff's federally-guaranteed constitutional rights; however the purpose of the Alabama statutes is to insure at least a reasonable approximation to the requirements that jury venires include all qualified persons, and, hence, represent a cross-section of the community, with no significant groups being excluded without justifiable reasons; therefore, the procedures outlined by the Alabama statutes can and do serve in this case as a standard by which the actions of the jury commissioners can and should be judged. . . . The sole purpose of these requirements is to insure that the jury commissioners will have as complete a list as possible of names, compiled on an objective basis, from which to select qualified jurors." Mitchell, 250 F. Supp. at 122-123.
"Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. Coe v. Davidson,43 Cal.App.3d 170, 117 Cal.Rptr. 630, 633, (1974). It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. In re Rudd's Estate, 140 Mont. 170, 369 P.2d 526, 530
(1962). Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. Kasner v. Stanmire, 195 Okla. 80,155 P.2d 230, 232 (1945). What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. Trussell v. Fish, 202 Ark. 956,154 S.W.2d 587, 590 (1941). For jury selection purposes, there can be no absolute measure of what is a "substantial" deviation from the ideal cross-section of the community and the term must be defined in its relationship to the situation in a particular county. United States v. McDaniels, 370 F. Supp. 298 (E.D.La. 1973).
In Swain v. Alabama, supra, it was determined that "a typical jury roll (in Talladega County) at best contains about 2,500 names . . . of 16,406 persons". In White v. Crook, supra, the court noted that in Lowndes County with a population of 15,417 "there should be no less than 1,000 names placed in the jury box". That is approximately 6.5% of the total population. The defendant's conviction was affirmed in Hill v. State,57 Ala. App. 437, 329 So.2d 126 (1976), where the Dale County jury roll contained 2,881 names in a population of 29,559.
Consequently, we cannot state that the fact that the jury commissioners of Limestone County placed only five percent of the total county population on the jury roll, in and of itself as a matter of law, violated the constitutional rights of the appellant because it was too small a number to represent a fair cross-section of the community or was not a substantial compliance with the Alabama statutes to safeguard the *Page 10 
administration of justice. Obviously, before the jury roll can be condemned for its alleged inadequate representation of the community, proof of what would constitute a fair cross-section must be offered. In this regard the appellant failed to prove what groups constituted a significant portion of the community and had been consistently omitted from or underrepresented on the venire or jury roll.
 C.
Finally, the appellant alleges that "the figures prove that the young, of both races, females and the blacks were greatly discriminated against in the make-up of the jury roll".
By testimony and stipulation the facts were established that the total population of Limestone County was 41,699; that more than 21,000 of this number were registered voters and that it might be a "good guess" that there were 5,000 unregistered voters in the county. The jury roll was composed of 2,163 names and constituted by race and sex as follows:
 White male : 1,535 White female : 418 Black male : 179 Black female : 31
The age distribution of the jury roll was also proven.
 Ages 21-30 : 102 31-50 : 1,024 51-65 : 1,037
The appellant contends that these figures alone establish a prima facie case of discrimination and underrepresentation.
The proof necessary to make out a prima facie case of discrimination basically amounts to the presentation of evidence showing that the particular class in question, although it forms a substantial and identifiable segment of the total population of the community, has been excluded from or significantly underrepresented on jury panels over an extended period of time. Disproportionate statistics, e.g., black population as against black jurors, may constitute a prima facie case of purposeful discrimination. Black v. Curb,464 F.2d 165 (5th Cir. 1972). Discriminatory selection will be inferred from a statistical analysis which reflects a significant disparity over a period of time between the percentage of the allegedly excluded class existing in the community and the percentage of that same class which appears on the jury venire. Neal v. Delaware, 103 U.S. 370,26 L.Ed. 567 (1881).
The basic elements of a prima facie case are: (1) That the class claiming to be excluded forms a substantial and identifiable segment of the overall population with some members of the class qualified to serve as jurors; (2) that there has been a significant disparity between those members of the class actually serving as jurors and their corresponding numbers in the general population; and (3) that the disparity has been continued over an extended period of time. Castanedav. Partida, 430 U.S. 482, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498
(1977); United States v. Hyde, 448 F.2d 815 (5th Cir. 1971), cert. denied, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745
(1972); Preston v. Mandeville, 428 F.2d 1392 (5th Cir. 1970);Jackson v. Morrow, 404 F.2d 903 (5th Cir. 1968); Billingsley v.Clayton, 359 F.2d 13, cert. denied, 385 U.S. 841, 87 S.Ct. 92,17 L.Ed.2d 74 (1966); Comment, 20 U.C.L.A. Law Rev. 581, 586 (1973); 9 Am.Jur. Proof of Facts 2d 407, 432 (1976).
In this case the appellant has failed to establish even the threshold requirements of a prima facie case of discriminatory jury selection in regard to youth and women. With reference to these two groups the appellant established only what number they constituted of a particular jury roll. The burden was on the appellant to establish at least a prima facie case of discriminatory jury selection by showing an opportunity for discrimination in the jury selection system and a substantial disparity between the number of "youth" and women eligible to serve as jurors and the number chosen. Whitus v. Georgia,385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); Singleton v.Estelle, 492 F.2d 671, 677 (5th Cir. 1974). The record before us does not demonstrate *Page 11 
the percentage of youth and women in the population of Limestone County and does not reveal anything about the number eligible to serve as jurors. United States v. Turcotte, 558 F.2d 893, 895
(8th Cir. 1977); Bowens v. State, 54 Ala. App. 491, 309 So.2d 844, cert. denied, 293 Ala. 746, 309 So.2d 850 (1974); Racine v.State, 51 Ala. App. 484, 286 So.2d 890, cert. denied, 291 Ala. 684, 286 So.2d 896 (1973); Harris v. State, 352 So.2d 460
(Ala.Cr.App. 1976); James v. State, 337 So.2d 1332 (Ala.Cr.App. 1976).
Additionally, age is not a valid criterion in determining whether an identifiable group, for purposes of a jury system reflecting a cross-section of the community, has been excluded.Hammond v. State, 354 So.2d 280, 287 (Ala.Cr.App.), cert. quashed, 354 So.2d 294 (Ala. 1977); Hurley v. State,335 So.2d 183, 187 (Ala.Cr.App.), cert. denied, 335 So.2d 188 (Ala. 1976);Giddens v. State, 333 So.2d 615, 617 (Ala.Cr.App. 1976);Williamson v. State, 52 Ala. App. 617, 618, 296 So.2d 241 (1974). Here there was no attempt to prove that the "youth" constituted a distinct and identifiable group within the community. Generally see 9 Am.Jur. Proof of Facts 2d 407, Discriminatory Jury Selection §§ 9 and 10 (1976).
Besides discrimination based on age and sex, the appellant also alleges that blacks were unlawfully excluded from the jury roll. The evidence submitted reveals that blacks represent approximately 18% of the total population of Limestone County and constitute about 10% of the jury roll.
The Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or on the jury which tries him; it merely prohibits deliberate exclusion of an identifiable group from the juror selection process. Swain v.Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The burden of proving systematic exclusion is on the defendant. It may not be assumed or merely asserted but must be proven.Butler v. Alabama, 285 Ala. 387, 232 So.2d 631 (1970). Mere statistical disparity between the number of blacks presumed eligible for jury duty and the number actually included in the jury roll does not of itself establish a primary inference of invidious discrimination. Swain, supra; Beecher v. State,294 Ala. 674, 320 So.2d 727 (1975); Rainer v. State, 342 So.2d 1348
(Ala.Cr.App. 1977). However a "substantial" or "wide" disparity may establish a prima facie inference of discrimination. Beecher,294 Ala. at 683, 320 So.2d 727.
Because of a "continued reliance on intuitive and untutored understanding of the laws of chance"[1] the courts have provided little guidance as to how great the discrepancy or disparity must be to establish a prima facie case of discrimination. On the one hand, token representation does not comply with equal protection.Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953);Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940);Billingsley v. Clayton, 359 F.2d 13 (5th Cir.), cert. denied,385 U.S. 841, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966). On the other, proportional representation is not required. Swain, supra; Akins, supra; Billingsley, supra. Thus there is no objective or even minimum standard concerning the size of the disparity which must be shown to establish a prima facie case.
In describing the degree of disproportionate representation that will give rise to a prima facie case of discrimination, the Fifth Circuit Federal Court of Appeals has employed *Page 12 
such terms as "wide disproportion", Mitchell v. Johnson,250 F. Supp. 117 (M.D.Ala. 1966) (The jury list was 35.7% black in a county whose population was 87% black); "significant discrepancy", Davis v. Davis, 361 F.2d 770 (5th Cir. 1966) (Sixteen percent black in the eligible population compared to 1.8% on the venires); "very decided variations", Labat v.Bennett, 365 F.2d 698 (5th Cir. 1966), cert. denied,386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334 (1967) (Blacks comprised 25.8% of the eligible population compared to an average of 6.2% and a maximum of 16.1% of venires); United States ex rel. Seals v.Wiman, 304 F.2d 53 (5th Cir. 1962) (31% compared to 2%). In finding no discrimination the court noted the complete absence of "spectacular underrepresentation" in United States v. Hyde,448 F.2d 815 (5th Cir. 1971), cert. denied, 404 U.S. 1058,92 S.Ct. 736, 30 L.Ed.2d 745 (1972).
In Swain v. Alabama, supra, the proportion of Negroes among the eligible population was 26% and their proportion of venires ranged from 10% to 15%. "This discrepancy is far from startling and considerably less than that found to be prima facie evidence of discrimination in any other case." Kuhn, 41 S.C.Law Rev. 235, 253.
There being no wide, significant or substantial disparity in this case and considering the other evidence presented on this matter, we do not think that the proof was sufficient to establish a prima facie case of discrimination. Because of the failure of proof the judgment of the trial court in denying the motion to quash the indictment was proper.
 II
Apart from the charges of discrimination in the selection of the jury roll, the appellant also contends that his conviction is due to be reversed because the court reporter lost his stenographic notes on the motion to quash the venire in the case of State v. John W. Lockett, Case Numbers 10,852 and 10,853. The court reporter certified this fact and the additional fact that he "did read said stenographic notes to the trial judge, R.L. Hundley, in the month of October, 1974, to be considered on the motion to quash the venire" in the case of the appellant.
In his written order denying the motion to quash the indictment the trial judge found that "it was stipulated and agreed . . ., by counsel for both sides, that the Court could consider, not only the testimony presented this day (October 14, 1975), but that the Court should consider the testimony previously offered" in several other cases including the Lockett cases. Under Alabama law the appellant has a duty to see that the record on appeal is correct. Cantrell v. Alabama, 546 F.2d 652 (5th Cir. 1977); Tyusv. State, 347 So.2d 1377 (Ala.Cr.App.), cert. denied,347 So.2d 1384 (Ala. 1977); Baxter v. State, 41 Ala. App. 533,143 So.2d 191, cert. denied, 273 Ala. 704, 143 So.2d 192 (1962); Weldon v.State, 21 Ala. App. 357, 108 So. 270 (1926).
Nowhere in the record before this Court, including the "designation of record on appeal", does it appear or is it even averred that this other testimony was requested or ordered to be included in the appellant's record on appeal. Objection was initially and only made to the absence of the lost testimony in the appellant's brief on appeal. There was no attempt to stipulate to the contents or substance of the lost testimony. See Alabama Rules of Appellate Procedure, Rule 10 (e). Rule 10 (d) A.R.A.P. specifically provides the procedure to be followed when a transcript of the evidence or proceedings is unavailable. Appellant's counsel admits in brief that "the appellant can only speculate what such evidence was". In view of these factors no issue is presented for review and the appellant has no legal cause to complain.
Additionally the appellant should not be heard to complain that his four exhibits, consisting of medical technician's reports and hospital records, were not included in the record on appeal. It appears that these reports were offered as exhibits in a companion case. All four exhibits were admitted into evidence at trial to prove that *Page 13 
scientific tests did not reveal the presence of sperm in the body of the prosecutrix or her sister and that the prosecutrix had given information to a nurse in the emergency room of the hospital that she was married and 18 years of age and contrary to her testimony at trial. In themselves or in their admission the exhibits constitute no issue on appeal. They were the appellant's exhibits and susceptible to being reproduced or photocopied. While this Court could order their production or reproduction under Rule 10 (f) A.R.A.P., they are not material to this appeal and would serve no useful purpose before this Court.
 III
The trial court did not err in refusing to charge the jury that they could find the appellant guilty of attempted rape or assault and battery as lesser included offenses of the crime of rape. There was no evidence in this case which would warrant the Court in charging the jury with respect to either of these lesser included offenses. "The crime was either rape or it was nothing. The court so charged; and in this, there was no error." Owens v.State, 29 Ala. App. 53, 56, 191 So. 899, 902, cert. denied,238 Ala. 519, 191 So. 903 (1939); Smith v. State, 34 Ala. App. 45,38 So.2d 341 (1948), cert. denied, 251 Ala. 559, 38 So.2d 347
(1949); Section 13-9-3, Code of Alabama 1975. Under the evidence, the jury could either believe the prosecutrix, in which case the appellant would have been guilty of rape, or they could have believed the appellant, in which case he was guilty of nothing. Therefore the requested charge as to lesser included offenses was properly refused. Fisher v. State, 57 Ala. App. 310,328 So.2d 311, cert. denied, 295 Ala. 401, 328 So.2d 321 (1976). A defendant may well be prejudiced by an instruction on a lesser included offense not warranted by the evidence. DeGraaf v. State,34 Ala. App. 137, 142-143, 37 So.2d 130 (1948).
 IV
The appellant's contention that the trial court abused its discretion in limiting defense counsel's closing argument to forty-five minutes is without merit. The record reflects no objection to this limitation and nothing is presented for review.
The trial continued over three days but neither the record nor appellant's argument reveals any abuse of discretion by the trial judge. Much discretion is allowed the trial court in respect to limiting arguments of counsel and, in the absence of some abuse of that discretion, no error exists. Peterson v. State, 231 Ala. 625,166 So. 20 (1936); Jackson v. State, 239 Ala. 38,193 So. 417 (1940); Stovall v. State, 18 Ala. App. 559, 93 So. 275 (1922).
 V
After careful examination we are satisfied that the two refused requested charges were fairly and adequately covered in given charge requested by the appellant. Therefore the refusal to give the additional requested charges was proper. Walker v. State,265 Ala. 233, 90 So.2d 221 (1956); Chambers v. State, 264 Ala. 8,84 So.2d 342 (1955); Ingram v. State, 356 So.2d 761 (Ala.Cr.App. 1978); Section 12-16-13, Code of Alabama, 1975.
 VI
The appellant's final allegation of error is that the jury was allowed to deliberate in a jury room equipped with a telephone. This objection was raised in the Motion for New Trial but there was no allegation or evidence that calls had actually been made or received by the jurors. The cases presented by the appellant in his brief are not analogous to the facts in this case. Two of the cases deal with jurors who read newspaper accounts which presented the accused in an unfavorable light. Sprinkle v. State,137 Miss. 731, 102 So. 844 (1925); Cartwright v. State, 71 Miss. 82,14 So. 526 (1893). The other two cases cited by Smith involve separation of the jury after the trial, but before the verdict was returned. Turner v. State, 54 Ala. App. 467, 309 So.2d 503
(1975); Palmore v. State, 283 Ala. 501, 218 So.2d 830 (1969). *Page 14 
The practice of permitting jurors to use the telephone while deliberating has been criticized. State v. Raspberry,452 S.W.2d 169 (Mo. 1970); Arnett v. Commonwealth, 470 S.W.2d 834, 837 (Ky. 1971). We have been cited to no case which holds that the mere presence of a telephone in the jury room, without at least some indication that calls were either made or received by members of the jury, is ground for reversal and a new trial. Indeed, it would be an exercise in speculation and conjecture for this Court to hold as a matter of law that the presence of a telephone in the jury room, without more, could in any way prejudice a defendant's right to a fair trial.
Moreover, we note that the record bears no evidence that there was a telephone in the jury room. Assertions of counsel in an unverified motion for new trial are bare allegations and cannot be considered as evidence or proof of the facts alleged.
After carefully considering each and every argument advanced on appeal and searching the record for error, our opinion is that the judgment of the trial court should be affirmed and the conviction of the appellant should stand.
AFFIRMED.
All Judges concur.
[1] Kuhn, 41 S.Calif.L.Rev. 235, 255 (1967).
 "This `prima facie rule' rests on the courts' intuitive understanding of the laws of chance. It is therefore necessary to show not merely the absence of Negroes from a particular jury but their continued absence (or substantial underrepresentation) over a period of time from a series of juries, venires or jury lists. Once such a showing makes chance a most improbable explanation, the state is called upon to show what the explanation is and that it is non-racial."
* * * * * *
 "To suggest that discrimination is at work, and accordingly to call upon the state to show that it is not, the discrepancy must be great enough to eliminate chance as a reasonable explanation . . ." Kuhn, 41 S.Calif.L.Rev. 235, 251-252 (1967). *Page 283