Appellant, Mark Monroe Geeslin, was convicted of kidnapping in the first degree and rape in the first degree. See §13A-6-43 and § 13A-6-61, Code of Alabama (1975). The trial court imposed a sentence of life *Page 1243 
imprisonment in the state penitentiary for each offense, to run consecutively.
Two issues are raised on appeal, neither of which requires a detailed account of the facts. Appellant first alleges that the State failed to disclose the results of medical tests specifically requested by the defense. Secondly, it is argued that the trial court's restricting closing arguments to forty minutes violated appellant's right to due process.
 I
At trial the State produced three witnesses that placed appellant at the shopping mall where the kidnapping and rape occurred. The victim identified her assailant as a white male, approximately 5' 11", 170 to 180 pounds, with light brown or dark blond hair, in his mid-twenties, unshaven or with several days growth of facial hair, and wearing a dark overcoat, down to his knees, and blue jeans. The offense took place at approximately 9:00 p.m. The victim identified appellant's photo from some 25 to 30 photos supplied by the police department and picked appellant out of a lineup at the police station. A mall employee testified that she observed appellant in the mall between 8:30 and 8:40 p.m. on the night in question. Appellant was wearing a black overcoat and had approximately a two-day growth of facial hair. Appellant's former mother-in-law and brother-in-law also testified that they observed appellant in the mall at approximately 8:25 p.m. that night and testified that he was wearing a dark "raincoat" that fell to his knees and that he had "whiskers."
Appellant produced several witnesses who testified that appellant did not own and had never worn a long, dark coat and that appellant was clean-shaven on the evening of the kidnapping and rape. Some of these witnesses testified that they talked with appellant, by phone, between 9:30 and 10:00 p.m. that evening. Through these witnesses appellant attempted to establish that someone other than himself committed the offenses charged.
Two weeks after the trial of this cause, defense counsel learned that the victim had contracted a veneral disease as a result of the rape. Defense counsel also learned that appellant had been tested for gonorrhea by the State twelve days after the rape occurred, and this test came back negative for gonorrhea. Appellant contends that the results of this test were never communicated to counsel or appellant and that the State therefore violated its duty to disclose exculpatory material as ordered by the trial court and in accordance with due process standards established in Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and A.R.Crim.P.Temp. Rule 18.1(d).
A hearing on appellant's motion for new trial was held on March 28, 1985. At this hearing Assistant District Attorney James Accardi testified that he was aware that the victim had contracted gonorrhea shortly after the incident occurred. Mr. Accardi had been informed of this by Detective James Parker, and Accardi had seen the hospital emergency room report which was completed the night of the rape. Accardi was also concerned about the results of the test conducted on appellant and maintained contact with Parker on this subject. Parker subsequently informed Accardi that appellant's test was negative. Accardi stated that Parker explained to appellant the reasons why he was being tested. Accardi admitted that he never discussed this information with defense counsel because he "expected the defense had access to it."
Detective Parker testified that he learned the victim had contracted gonorrhea and that he talked with appellant about being tested. Parker testified that he spoke with appellant and appellant's attorney, Mr. Mark McDaniel, about the need for appellant to be tested. (Mr. McDaniel did not represent appellant at trial and did not testify at the hearing.) Parker stated:
 "We explained to Mark McDaniel and also Mark Geeslin about the tests that we were going to need. We were going to need blood samples, hair samples, saliva samples, and a test for gonorrhea. Mr. McDaniel advised myself, along with Sergeant Thompson, that he had told Mark Geeslin to cooperate with us, that *Page 1244 
all we would need would be a court order to obtain those things and, therefore, he was going to cooperate."
On cross-examination, Parker testified as follows:
 "Q. Mr. Parker, did you have a conversation with Mark when you took him down for the test about the test and why you were doing it?
"A. Yes, sir, I did.
 "Q. Would you tell the jury [sic] what you informed him at that time?
 "A. I advised him that the victim had contracted the disease and that we were asking him to submit to a test to see if, in fact, he had this disease.
 "Q. Did he indicate that he understood that procedure to you?
"A. Yes, sir, he did.
"Q. What did he tell you about it?
 "A. He said, well good, I will take the test, and if I haven't got it, that will mean I am innocent. I wasn't involved in it.
"Q. Did you observe the procedure conducted?
"A. I did.
 "Q. Were you present when the procedure was conducted.
"A. Yes, sir, I was."
Appellant testified that he was told by one of the detectives that he would be subjected to blood, hair, and semen samples, but he was not told what the tests were specifically for. Appellant was never informed of the results of these tests. According to appellant he was not aware that he had been tested for gonorrhea until he explained the procedure to another inmate, who told him what test had been performed.
The trial court denied appellant's motion for new trial, stating:
 "The Court has considered the motion grounds and the evidence presented as well as the brief submitted. The Court notes that the State failed to comply with the Court's order to provide the defendant, prior to trial, with all exculpatory evidence in the State's possession. The Court observes that there is clear and convincing evidence to establish that the defendant was aware, prior to trial, of the existence of the evidence which he asserts was not disclosed by the State. Based upon that this Court finds that the State's compliance with the order of disclosure was in good faith and totally adequate. The Court finds no other ground supported in law or fact."
Appellant argues that Brady, supra, requires the State to disclose the fact of the victim's contracting gonorrhea and the fact that appellant's test results were negative. In order to establish a Brady violation the appellant must prove: "(1) The prosecution's suppression of evidence; (2) the favorable character of the suppressed evidence for the defense; (3) the materiality of the suppressed evidence." Monroe v. Blackburn,607 F.2d 148, 150 (5th Cir. 1979); Knight v. State,478 So.2d 332 (Ala.Crim.App. 1985). "The heart of the holding inBrady is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment." Moore v. Illinois, 408 U.S. 786, 794,92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972).
The trial court clearly found the element of "suppression" missing from appellant's proof. There was conflicting evidence presented as to appellant's knowledge of being tested for gonorrhea because the victim had contacted gonorrhea. Obviously, the trial judge believed Officer Parker. Any conflict in the evidence was for the trial court to resolve, and his ruling will not be disturbed absent a showing of abuse of discretion.
The term suppression "means non-disclosure of evidence that the prosecutor, and not the defense attorney, knew to be in existence." Ogden v. Wolff, 522 F.2d 816, 820 (8th Cir. 1975). "The concept of 'suppression' implies that the Government has information in its possession of which the defendant lacks knowledge and which the defendant would benefit from knowing."United States v. Natale, 526 F.2d 1160, 1170 (2d Cir. 1975). "Evidence is not 'suppressed' if the defendant either knew . .. *Page 1245 
or should have known . . . of the essential facts permitting him to take advantage of any exculpatory evidence." UnitedStates v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982). "There could be no suppression by the state of evidence already known by and available to [the defendant] prior to trial." DeBerry v. Wolff,513 F.2d 1336, 1340 (8th Cit. 1975).
In United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978), the Court stated:
 "Under Brady, the Government may not withhold material exculpatory evidence specifically requested by the defense. . . . However, where the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a Brady violation by not bringing the evidence to the attention of the defense."
See also United States v. Ruggiero, 472 F.2d 599 (2d Cir. 1973); United States v. Stewart, 513 F.2d 957 (2d Cir. 1975);United States v. Robinson, 560 F.2d 507 (2d Cir. 1977); Pina v.Henderson, 752 F.2d 47 (2d Cir. 1985). We agree with the propositions expressed by the above cited cases. The State is not required to make information known to a defendant who is on notice of the essential facts which would enable him to take advantage of any exculpatory evidence that may be present. There can be no suppression where the defendant has knowledge of the facts allegedly suppressed.
In the case at bar, appellant was obviously aware that certain tests had been conducted by the State. Parker testified that he specifically told appellant why he was being tested and that he was being tested for gonorrhea. The results of this test could easily have been obtained by appellant from the State lab. Appellant was on notice of the essential facts which would have enabled him to take advantage of the gonorrhea test conducted by the State. The State, therefore, cannot be said to have suppressed this evidence.
 "The purpose of the Brady rule is not to provide a defendant with a complete disclosure of all evidence in the government's file which might conceivably assist him in preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him."
Ruggiero, 474 F.2d at 604. Because the information was known to appellant, his arguments that reversal is required under Brady;
A.R.Crim.P.Temp. 18.1(d); or the theory of newly discovered evidence, are without merit. We find no abuse of discretion in the trial court's denial of appellant's motion for a new trial.
 II
Appellant next contends that the trial court's limiting closing arguments to forty-five minutes per side violated his constitutional right to a fair trial. Appellant maintains that due to the length of the trial (two days) and the number of witnesses (twenty-two), more time should have been allotted for closing arguments.
In Smith v. State, 364 So.2d 1, 13 (Ala.Crim.App. 1978), this court stated: "Much discretion is allowed the trial court in respect to limiting arguments of counsel, and in the absence of some abuse of that discretion, no error exists." We find no abuse of discretion in the case at bar. This cause was not extremely complex and many of the witnesses presented cumulative and repetitive testimony. No error was committed by the trial court's limiting closing arguments to forty-five minutes per side.
Based on the foregoing, this case is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 1246