239 So.2d 198

STATE of Alabama ex rel. Warren Lowe GREGG

v.

James Herman MAPLES, Clayton Brock and A. C. Sharp, Jr., as Members of the Jury Commission of Madison County, Alabama, et al.

8 Div. 396.

Supreme Court of Alabama.

Sept. 3, 1970.

Fred B. Simpson, Huntsville, for appellees.

———◇———

Martinson, Manning & Martinson, Huntsville, for appellant.

LAWSON, Justice.

This is an appeal from a judgment of the Circuit Court of Madison County rendered on February 6, 1970, as amended by the trial court, *ex mero motu,* on February 12, 1970.

The pertinent provisions of the decree, as amended, read:

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED and DECREED by the Court that the writ of mandamus issued by this Court on January 21, 1970, is hereby vacated and held for nought, the peremptory writ of mandamus is denied, and the order of this Court issued on September 23, 1969, is reinstated."

The "order" of September 23, 1969, was rendered in response to a motion filed by one Paul Allen Miller on August 21, 1969, in a criminal case, State of Alabama v. Paul Allen Miller, which was pending in the Circuit Court of Madison County. The said motion prayed for an order of the court directing the Jury Commission of Madison County to "organize a new jury roll and to empty and refill the jury box" on the grounds that the "present jury rolls do not contain a cross-section of citizens qualified to serve as jurors in Madison County, Alabama," and that "no fair and reasonably accurate method is used by said Commission to determine the qualifications of citizens of this County to serve as jurors," and that "all qualified citizens of Madison County do not have an equal opportunity to be chosen for the present roll of this County."

The District Attorney confessed the averments of said motion and consequently no evidence was adduced in support thereof.

The "order" of September 23, 1969, which is alluded to in the amended judgment from which this appeal is taken, reads in part as follows:

"STATE OF ALABAMA COMPLAINANT

VS

PAUL ALLEN MILLER DEFENDANT

ORDER

"This cause coming on to be heard upon the motion of the Defendant to call together the jury commission for the purpose of refilling the jury box and for the purpose of reorganizing the jury roll of Madison County and the Court, having heard and considered said motion, is of the opinion that the motion should be and the same is hereby granted, it is, therefore,

"ORDERED, ADJUDGED and DECREED that the following plan for refilling the jury box and reorganizing the jury roll of this county be forthwith adopted and placed into effect and operation by the jury commission of this county, and that the jury box of this county be refilled according to the following plan prior to January 1, 1970;

"JURY REFILLING AND REORGANIZATION PLAN

SECTION I

*Procedures*

"(1) *Voters List:* The names of the registered voters of the county shall be used as the list of names required to be compiled by Section 18, Title 30, as the list of persons to be considered for jury service. From the registration records of the county a card file shall be set up to show the name, date of birth, sex, race, date of registration, and address, if available, of each person registered to vote, and such a file set up by or in the possession of the Board of Registrars shall be used as set out in this plan. The other information required to be obtained

by Title 30 shall be obtained as set out in this plan."

Judge David R. Archer, who rendered the order of September 23, 1969, apparently undertook to amend that order, *ex mero motu,* on December 16, 1969. The only changes effectuated in that part of the order of September 23, 1969, which we have set out above, by the so-called amended order of December 16, 1969, was to insert the word "primary" before the word "list" where it appears in line 2 of paragraph (1) and by substituting the word "should" for the word "shall" where that word appears for the second time in the second sentence of paragraph (1). We call attention to these changes solely for the sake of accuracy. The appellees do not place any importance on the changes, perhaps for the reason that Judge Archer's right to amend the order of September 23, 1969, *ex mero motu,* on December 16, 1969, is certainly questionable.

The so-called "Jury Refilling and Reorganization Plan," hereinafter referred to as the "Plan," contains many provisions in addition to those which we have set out above, but we see no reason to include them in this opinion.

On January 21, 1970, a petition was filed in the Circuit Court of Madison County styled State of Alabama ex rel. Warren Lowe Gregg v. James Herman Maples, Clayton Brock, and A. C. Sharp, Jr., as members of the Jury Commission of Madison County, Alabama, and against A. L. Smith, as Clerk of the Jury Commission of Madison County, which petition prayed in pertinent part as follows:

"* * * that your Honor will grant an alternative writ of mandamus, directed to the Respondents in their official capacities as members of the Jury Commission of Madison County, Alabama and as Clerk of said Commission, commanding them to immediately destroy the presently existing rolls of names purporting to be the Jury Roll for Madison County, Alabama; to empty the Madison County jury box of all names which are now therein, and to immediately destroy all of the cards therein; to prepare a new Jury Roll for said County, placing thereon to the extent possible, the names of all citizens of said County between 21 years and 65 years of age who are 'generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgment', and who are not exempted by law from jury duty, and who are not disqualified by law from jury duty; to refill said jury box with all names on said new Jury Roll prepared in compliance with the statutes of this State as the law requires; to disregard in its entirety the aforesaid order, or any subsequent order heretofore entered in said Miller case purporting to control said Jury Commission in the exercise of its official duties; and to follow exclusively the procedure prescribed by the statutes of Alabama pertaining to the enrolling of jurors, the filling of the jury box, and the conduct of their respective offices; or, to appear at a time and place designated by Your Honor, and show cause why they have not done and should not do, as commanded; and Petitioner respectfully prays for any other and further relief and for such other and further orders and judgments, including preemptory [sic] writ of mandamus to which Petitioner may be entitled under the facts above alleged."

On the day the said petition for writ of mandamus was presented to him, Judge Archer issued a fiat to the clerk of the Circuit Court of Madison County directing her to issue an alternative writ of mandamus to each of the "respondents to the petition and be made returnable to me on the 29th day of January, 1970, at Chambers at 10:00 a. m. in the Courthouse at Huntsville, Alabama."

The said order or fiat contained the following language:

"The respondents are commanded to cease and desist from compiling a jury

roll and from filling the jury box for use in Madison County, Alabama, under the order of September 23, 1969, and as amended and require them to retain the existing roll of names purporting to be the jury rolls for Madison County, Alabama, as compiled under the order of September 23, 1969, and to appear and show cause on the above date why the existing jury rolls of Madison County, Alabama, should not be destroyed and the jury rolls recompiled and the jury box refilled in compliance with the laws of the State of Alabama."

Pursuant to the fiat, an alternative writ of mandamus in approximately the language last quoted was issued by the clerk on January 21, 1970, returnable on January 20, 1970.

On January 29, 1970, the members of the Jury Commission and Pat Brookbank, successor to A. L. Smith as Clerk of the Jury Commission, filed their joint answer. The allegations of the answer were not traversed by the relator, and on February 5, 1970, the parties submitted the cause to Judge Archer for judgment upon the petition and the answer filed thereto.

On February 6, 1970, Judge Archer rendered a judgment vacating the alternative writ of mandamus theretofore issued, reinstating the order entered on September 23, 1969, in the *Miller case, supra.* On February 12, 1970, Judge Archer rendered the amended judgment which we have set out above, wherein the peremptory writ of mandamus prayed for by the relator was expressly denied.

The question on this appeal is whether the trial court erred in vacating the alternative writ of mandamus and in denying the peremptory writ of mandamus.

Under the "Plan" the name of no person can be placed on the jury roll in Madison County unless the name of that person appears on the registration records or lists of that county as a registered voter. This limitation is a radical departure from the statutory system enacted by the legislature of this state, which system applies to Madison County, and is repugnant to so many aspects of that system as to constitute a usurpation of the authority of the legislature.

The procedure for the selection of jurors in most of the counties of this state, including Madison, is controlled by general statutes which are set forth in the 1958 Recompiled Code of Alabama. All statutory references to the procedure for the selection of jurors in Alabama as set forth in this opinion will be to Title 30, 1958 Recompiled Code, *supra,* and the 1969 Cumulative Pocket Part to Vol. 8 of that Code.

Each county in Alabama has a jury commission composed of three members appointed by the Governor, with some exceptions provided by local acts or general acts with local application. Madison County, as indicated above, is not within any such exception.

The jury commissioners are required to "make in a well-bound book a roll containing the name of every citizen living in the county who possesses the qualifications herein prescribed and who is not exempted by law from serving on juries." § 20, Title 30, as amended. It is provided in § 21, Title 30, as amended, in part as follows: "The jury commission shall place on the jury roll and in the jury box the names of all citizens of the county who are generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgment; * * *." As a part of the procedural requirements, the names of persons on the jury roll must also be printed on separate cards, which are placed in the jury box. It is the duty of the clerk to see that the name of each person possessing the qualifications for serving as a juror and not exempted by law from jury duty "is placed on the jury roll and in the jury box." § 24, Title 30, 1958 Recompiled

Code. The Alabama law further requires the jury commission and its clerk to scan the registration lists, the lists returned to the tax assessor, any city directory and telephone directories, and any and every other source of information, and to visit every precinct in the county at least once a year.—§ 24, Title 30, 1958 Recompiled Code of Alabama.

Despite the provisions of § 24, Title 30, *supra,* the "Plan" says to the jury commission that it may only consider the names of the persons who appear on the registration lists or records of the county.

The purpose of §§ 18, 20 and 24 of Title 30 is "to protect litigants and to insure a fair trial by an impartial jury." And "substantial compliance with these requirements is necessary in order to safeguard the administration of justice." Inter-Ocean Cas. Co. v. Banks, 32 Ala.App. 225, 227, 23 So.2d 874, 875.

Some of the opinions wherein the aforementioned statutes are construed were written in recent cases, in which the appellants complained of the systematic exclusion of Negroes from juries in Alabama. In Fikes v. State, 263 Ala. 89, 81 So.2d 303, it was held that the evidence at a hearing on a motion to quash did not support a finding that Negroes were systematically omitted from the jury roll. This court in *Fikes, supra,* said that "[t]here is no legal reason for quashing an indictment or venire simply because the jury commission did not put the name of every qualified person on the roll or in the jury box, in the absence of fraud (or a denial of constitutional rights)." (263 Ala., 95, 81 So.2d 309) Bell v. Terry, 213 Ala. 160, 104 So. 336; Wimbush v. State, 237 Ala. 153, 186 So. 145.

That statement of the law was recognized by two federal decisions in granting injunctive relief to Negroes, but the court went on to say that "the law does require that the jury commissioners do not place so few names in the jury box as not to obtain a full cross-section of the county." Mitchell v. Johnson, 250 F.Supp. 117 (N. D.Ala., 1966); White v. Crook, 251 F. Supp. 401 (M.D.Ala., 1966).

In the *Mitchell case, supra,* the court said that "the purpose of the Alabama statutes is to insure at least a reasonable approximation to the requirements that jury venires include all qualified persons, and, hence, represent a cross-section of the community, with no significant groups being excluded without justifiable reasons; therefore, the procedures outlined by the Alabama statutes can and do serve * * * as a standard by which the actions of the jury commissioners can and should be judged." 250 F.Supp. at p. 122. And that the "sole purpose of these requirements is to insure that the jury commissioners will have as complete a list as possible of names, compiled on an objective basis, from which to select qualified jurors." 250 F. Supp. at p. 123.

In Bokulich v. Jury Commission of Greene County, 298 F.Supp. 181 (N.D.Ala., 1968), the court summarized the present position of the law as to these statutes, stating:

"Failure to put on the roll the name of every qualified person may not be the basis for quashing an indictment or venire absent fraud or denial of constitutional rights [citing Fikes], but substantial compliance with these legislative safeguards established to protect litigants and to insure a fair trial by an impartial jury is necessary in order to safeguard the administration of justice. [citing Inter-Ocean, supra]." 298 F.Supp., 186–187.

The appellees argue that the "Plan" provides for substantial compliance with the statutes in that names gotten from the voter registration lists would provide an adequate cross-section of the county. They cite United States v. Greenberg, 200 F.Supp. 382 (S.D.N.Y., 1961), in support of this theory. While it is correct that the court in that case held a grand jury was properly

impanelled even though the names comprising the panel were drawn from lists of persons registered to vote, the case is not in point here. In *Greenberg, supra,* the court was discussing the selection of a federal jury and was concerned solely with the federal procedure. The court in that case said as follows:

"Congress has not chosen to establish any uniform system of selecting the array of qualified jurors from which grand and petit juries are to be drawn. There is no prescribed method of selection. Congress has established uniform qualifications for individual jurors but it has left to each district the adoption of suitable methods to obtain the necessary talesmen." 200 F.Supp., 388.

The opinion in *Greenberg* quotes from Padgett v. Buxton-Smith Mercantile Co., 283 F.2d 597, 598 (10 Cir., 1960), cert. denied, 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 705, as follows: "Neither statutory nor case-made law requires the use of any particular source of names so long as there is no systematic exclusion of the members of any race, creed, social or economic group."[1] In the present case, we are to some extent dealing with a discretionary matter, but with a system of selection which the legislature has specifically provided and with which the jury commission must substantially comply.

Unregistered voters would seem, in the absence of statistics to the contrary, to comprise a substantial segment of the population of any area. And such a system of jury selection which omitted them would not substantially comply with the statutes in Alabama, nor would such a procedure insure the jury commission as complete a list as possible. Mitchell v. Johnson, *supra.*

Further, the appellees' reliance on the *Fikes* decision, *supra,* that a venire need not be quashed on the ground that the name of every qualified juror is not on the jury roll is without merit. That decision is qualified by the caveat, "in the absence of fraud." Fraud used in this sense has been construed as encompassing more than criminal wiles: "Fraud is a relative term, it includes all acts and omissions which involve a breach of legal duty injurious to others." Inter-Ocean Cas. Co. v. Banks, *supra.* And it has been held that "When it affirmatively appears that the names of a large number of citizens who possess the qualifications required by law of jurors, are intentionally omitted from the jury roll * * * that is a fraud in law that requires the quashing of a venire * * *. It is not the kind of a jury box contemplated by law. Our Statutes do not contemplate * * * any system or scheme of selecting other than the selection of names authorized by law * * *." 32 Ala. App. at p. 227, 23 So.2d at p. 875, citing Doss v. State, 220 Ala. 30, 123 So. 231.

In view of the foregoing, we hold that the trial court erred in vacating the alternative writ of mandamus and in denying the peremptory writ of mandamus.

The judgment of the trial court is reversed and the cause is remanded with directions that a judgment be rendered and entered in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

LIVINGSTON, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.

---

[1]. The selection of persons to serve on federal juries is now controlled by "The Jury Selection and Service Act of 1968." 28 U.S.C., §§ 1861–1869. See excellent article by the Honorable Walter P. Gewin, United States Circuit Judge for the Fifth Circuit Court of Appeals, Mercer Law Review, Vols. 19–20, 1968–69.