DeCARLO, Judge.
This is an appeal from a judgment of the Baldwin Circuit Court, denying the appellant’s petition for the issuance of a writ of mandamus.
On December 31, 1977, law enforcement officers in Baldwin County arrested and charged approximately ten individuals with possession of marijuana. One of those charged and arrested was the appellant, Raul Oyarzun.
After indictment, but prior to arraignment, the appellant filed a petition for a writ of mandamus on relation of State of Alabama against the clerk, chairman, and members of the Baldwin County Jury Commission, alleging that the jury commission and the clerk had failed to carry out their duties, as prescribed by the laws of the State of Alabama, in selecting potential jurors, maintaining the jury rolls, and filling the jury box with prospective jurors.
A hearing was held and the appellant presented the testimony of a number of witnesses. Among those testifying were the respondents, Alex Pittman, Walter Foster and Isola Faust (members of the jury commission of Baldwin County), and Lois Hughes, the clerk of the commission. The Baldwin Circuit Court denied the petition at the end of the hearing and Oyarzun appealed the judgment to the Supreme Court of Alabama.
The appeal was transferred to the Court of Criminal Appeals by the Alabama Supreme Court on May 9, 1978. On May 16, 1978, the Court of Criminal Appeals struck the appeal of Oyarzun.
After an application for rehearing was overruled, the appellant filed a petition for a writ of certiorari in the Alabama Supreme Court, requesting that the Supreme Court require the Court of Criminal Appeals to hear the appeal. The petition for certiorari was denied by the Supreme Court of Alabama on June 9, 1978.
*577 A petition for reconsideration of the denial of writ of certiorari was filed by the appellant on June 20,1978, and on June 28, 1978, the Alabama Supreme Court restored the case to its docket. On September 6, 1978, the Alabama Supreme Court restored the case to its docket. On September 6, 1978, the Alabama Supreme Court issued an order stating that it was the opinion of that court that the Court of Criminal Appeals had jurisdiction of the appeal and it was transferred to the Court of Criminal Appeals for review.
During the hearing on the petition, the three commissioners of the Baldwin County Jury Commission and its clerk were called to testify in support of the writ of mandamus. For the sake of brevity, we have summarized the testimony of these witnesses.
Lois Hughes was the clerk of the jury commission. She was appointed in December, 1976, and had served approximately one year at the time of this hearing. According to Mrs. Hughes, she was instructed to “get the names on the cards that were to go in the jury box and enter them into the jury roll.”
She testified that she was not to prepare a jury roll, but merely to add names. Further, she stated it was the commissioner’s job to gather the names of potential jurors to be placed on the jury roll. Also, that she had never been instructed to prepare a list of citizens of Baldwin County between the ages of nineteen and sixty-five. She explained that the names had listings of beats next to them, rather than precincts; and that the beats numbered one through fifteen. She said they endeavored to use the citizen’s “full name,” rather than initials.
Mrs. Hughes testified she had used the telephone directory of the Bay Minette area as a source for gathering names of citizens to be included on the jury roll.
Mrs. Hughes recalled that she had not prepared a list of names of the citizens in the county between the ages of nineteen and sixty-five, but stated, “we have been working on putting some younger ones in there.” She said that she had started this task approximately in January of 1978, about the time the Code was changed permitting nineteen year-olds to be placed on the list, which was several weeks prior to the hearing.
Further testimony by Mrs. Hughes was that she had been helping the commissioners to gather names and that this effort was being made “mostly on the telephone.” She testified she had approximately one-hundred and fifty to two-hundred cards prepared that were included in the jury box.
Mrs. Hughes testified that the ages of those on the jury roll were not listed and she could not tell how many people on the jury roll were over the age of sixty-five.
During further questioning, it was shown that specific named individuals did not appear on the jury roll. She stated there were some names that appeared on certain venires that had not been purged from the list. She explained that she had not had sufficient time to get to some of them, but did have correspondence in her folder on those to be taken off the jury roll. She said that the correspondence was from the circuit judge and the sheriff’s office.
Mrs. Hughes also stated she had added approximately three-hundred names to the jury list during her tenure as clerk of the commission. These names would appear at the bottom of the particular page on which they were added. There were names of individuals in the jury box, whose names did not appear on the jury roll, but she produced another list of about forty-five names, which she said she would compare with the jury roll to determine whether or not they were listed.
Mrs. Hughes stated that, during her tenure in office, approximately five-hundred names had been supplied to her by the commissioners. She said she did not know “how many ways they have for getting them (names),” but the commissioners brought them in during their meetings, and that she had also received them by mail. She said as to investigating the qualifications of the person whose name she had *578 been given, such task was left up to the person who supplied her with the name; that she had received names only from friends and the jury commissioners.
Mrs. Hughes testified that the jury commission met four times a year usually in the probate judge’s office. Further, she said that on only one occasion had one of the commissioners been absent and that was due to illness. Mrs. Hughes said the names of the people to be added to the roll were discussed during these meetings, as well as those to be removed; that she did not strike any names from the roll unless she had letters from the circuit judge or the sheriff’s office. She admitted there were few names that she had typed on cards that were in the jury box that had not been entered on the jury roll and that she did not know the other ways the commissioners used to gather names, but she did know they used the telephone book and some personal contacts.
During further questioning, Mrs. Hughes stated that during her tenure in'office the jury roll had not been purged to determine those persons over the age of sixty-five.
Walter Foster had been the chairman of the jury commission for five years and he identified the jury roll as being the only one in existence. Further, he admitted, that, during his tenure of office, it had been the practice of the jury commission merely to add names to the pages in the jury roll.
Mr. Foster admitted he had not instructed the clerk to prepare a list of those citizens in Baldwin County from the ages of nineteen to sixty-five; that he had never instructed the clerk of the commission to examine the list of names prepared by the tax assessor, but did say he had asked the members of the commission to use telephone books and other methods to try to get names; and that he had instructed the clerk to examine the records maintained by the utility department within the county as a source of names. Mr. Foster stated that Ms. Garner, the previous clerk, had such a list which involved the “lower end” of the county.
Mr. Foster explained that he knew, personally, some five thousand people in Baldwin County, and by using the telephone book, making contacts and other sources, he gathered names. Mr. Foster testified he had not gone to every precinct in the county but that he had instructed some of the other commissioners to go to other precincts or districts.
Mr. Foster stated that the last jury commission meeting in Baldwin County was on February 1, 1978, and the meeting was for the purpose of going through the list of some forty or fifty names to be “purified.” During cross-examination, Mr. Foster stated he had received a list of people who had automobile tags registered in their name in Baldwin County. He said that the intent of the meeting was to use the automobile tag list names for the purpose of gathering names for the jury roll and that this was in addition to the use of his personal contacts and the telephone directories. He also testified that, if he did not know the particular people, he would call the solicitor to determine if they had been charged with a crime.
Isola Faust had been a member of the jury commission in Baldwin County for a period of two years at the time of the hearing. She testified she had been given a list of the rules by Mr. Foster and that she had worked “from Spanish Fort back to Point Clear, and in Robertsdale” for the purpose of gathering names. She said that she lived in Fairhope and had worked up and down the eastern shore; and that she had gathered names by calling people on the telephone and by contacting people that she knew.
During cross-examination, Mrs. Faust said she was seventy years old and had lived in Baldwin County for approximately thirty-five years, and that she had one son who lived in Foley and three daughters in Fair-hope.
Alex Pittman had been a member of the jury commission in Baldwin County for seven years. Pittman stated that his duty on the jury commission was to gather names to go in the jury box; that he did not know of any list that had been prepared showing the *579 citizens of Baldwin County between ages of nineteen and sixty-five.
Mr. Pittman explained that, in gathering names, he visited different places in the county other than where he lived, and he had visited Robertsdale, Foley, Alberta, Lillian, Gateswood and Loxley; and that in gathering names, he not only relied on his own personal knowledge of the individuals he placed on the jury roll, but on the knowledge of other law-abiding citizens of the county.
During cross-examination, Mr. Pittman stated that he was seventy-four years old and had lived in Baldwin County all of his life. Further, that he had been born and raised in Gateswood a section of Baldwin County; and that he knew a “goodly portion” of the people in the county.
The petition for writ of mandamus contained fourteen allegations, three of which were jurisdictional in nature. The last two, numbered thirteen and fourteen, were not allegations in support of the petition. Thirteen was an assertion that the appellant would be tried by a jury not constituted in accordance with the laws of Alabama, and fourteen was an averment of standing of interest to seek such relief.
These allegations are grounded on the alleged fact that the jury commission of Baldwin County committed fraud in the performance of its duty. We will review the grounds of the petition in the light of appellant’s contention and the evidence submitted during the hearing.
The allegations set forth in the petition will be discussed in the order of their appearance, beginning with allegation number four.
From the petition, Number 4 reads:
“The Respondents have willfully, knowingly and intentionally failed to place the names of substantially all of the citizens of Baldwin County who are generally reputed to be honest and intelligent and who are esteemed to the community for their integrity, good character and sound judgment on the jury roll of Baldwin County, Alabama, and in the jury box of said county.”
In Fikes v. State, 263 Ala. 89, 81 So.2d 303, the Alabama Supreme Court stated:
“There is no legal reason for quashing an indictment or a venire simply because the jury commission did not put the name of every qualified person on the roll or in the jury box, in the absence of fraud (or a denial of constitutional rights). . . . ”
The court went on to say that the commissioners must act in good faith and “not omit a segment of the people who are qualified to serve without a fair representation.”
In recognizing this principle, the Federal District Court for the middle district of Alabama, in 1966, in Mitchell v. Johnson, 250 F.Supp. 117, stated that the purpose of the Alabama statute was to insure that at least “a reasonable approximation to the requirements of the jury venires include all qualified persons, and, hence, represent a cross-section of the community, with no significant groups being excluded without justifiable reasons . . .” See State ex rel. Gregg v. Maples, 286 Ala. 274, 239 So.2d 198.
The failure to place the name of every qualified person on the jury roll is not sufficient basis for quashing an indictment or venire without a showing of fraud or a denial of constitutional rights. Substantial compliance with the first paragraph of § 12-16-41, Code of Alabama 1975, is all that is required absent of fraud or a denial of constitutional rights. State ex rel. Gregg v. Maples, supra.
In Gregg v. Maples, supra, in defining the necessary fraud, the Supreme Court stated:
“Fraud used in this sense has been construed as encompassing more than criminal wiles: ‘Fraud is a relative term, it includes all acts and omissions which involve a breach of legal duty injurious to others.’ Inter-Ocean Gas Co. v. Banks, supra. And it has been held that ‘When it affirmatively appears that the names of a large number of citizens who possess the qualifications required by law of jurors, are intentionally omitted from the jury roll * *
*580 Further, this court in Smith v. State, 54 Ala.App. 561, 310 So.2d 484, stated that the fraud required is that of an intentional omission from the jury roll and the jury box of large numbers of legally qualified citizens. Also, in Smith v. State, supra, this court said the aim and the purpose of the law is to obtain juries which truly represent a “cross-section of the community.”
The burden of showing fraud is upon the petitioner and there is a presumption that no legal fraud exists. Nixon v. State, 291 Ala. 657, 286 So.2d 315.
The U.S. Census of 1970 showed that Baldwin County had a population of 59,382. Of this figure, there were approximately 35,000 people between the ages of nineteen and sixty-five years of age. Presently, there are 3,145 names on the jury roll in Baldwin County, which is about ten percent of those within the age range eligible for jury service. Over five percent of the total population of Baldwin County is on the jury roll.
We cannot state that because only five percent of the total population of Baldwin County is on the jury roll, in and of itself as a matter of law, violated the constitutional rights of the petitioner. See Smith v. State, 364 So.2d 1 (Ala.Cr.App.1978).
Proof of what constitutes a fair cross-section of the community must be offered before the jury roll can be condemned for its alleged inadequate representation. No proof was shown to illustrate that a significant portion of the community had been consistently omitted from, or underrepresented on the jury roll. Smith v. State, supra.
From the petition, allegation Number 5 reads:
“Neither of the Respondents, their agents, servants or employees, has scanned voter registration lists, any list returned to the Tax Assessor, city directories, nor telephone directories. The Respondents have neither individually nor collectively visited every precinct within Baldwin County within twelve (12) months next preceding the filing of this Petition for Writ of Mandamus to enable said Commissioners, or the Clerk thereof, either as individuals, or as a group, to properly perform the duties required of them by the laws of the State of Alabama.”
No legal requirement exists, either by statutory or case law, mandating the use of any particular source of names. The only requirement being that there exists no systematic exclusion of the members of any race, creed, social or economic group. Gregg v. Maples, supra.
Mr. Alex Pittman, the jury commissioner, testified that he had visited Robertsdale, Foley, Alberta, Lillian, Gateswood and Lox-ley, for the specific purpose of gathering names of individuals to place on the jury roll.
Section 12-16-41, Code of Alabama 1975, (in effect at the time this was heard) required the clerk of the jury commission to visit every precinct in the county at least once a year for the purpose of gathering names. The clerk of the jury commission was Lois Hughes and not Mr. Pittman, but this court has held that another member of the commission can carry out this task. See Smith v. State, Court of Criminal Appeals Ms., supra.
Testimony was given by the probate judge regarding the location of the two precincts in Baldwin County. According to Judge D’Olive’s directions, we find that Mr. Pittman and Mrs. Isola Faust visited communities in both precincts.
Walter Foster, the chairman of the jury commission, stated that he had used telephone directories and automobile tag lists to gather names. Further, he said that he personally knew some five thousand people in Baldwin County, some of which he had placed on the jury roll. The other members of the jury commission testified that they had placed names from the various communities on the jury roll.
From the evidence, we conclude that the jury commission of Baldwin County *581 substantially complied with § 12-16-41, Code of Alabama 1975, (in effect at the time this was heard). See Mitchell v. Johnson, 250 F.Supp. 117 (M.D.Ala.1966); White v. Crook, 251 F.Supp. 401 (M.D.Ala.1966). The use of the so-called “key man” system, along with the use of other lists of people (i. e. telephone books, automobile tag lists), would establish substantial compliance. Smith v. State, supra.
In short, appellant has not shown where any significant population group of Baldwin County was not represented on the jury roll as a result of the actions of the commissioners. No evidence was offered to show that the key man system did not furnish a representative sampling of all relevant segments of the county, or that the lists reflected disproportionate representation and were a product of discrimination. Smith v. State, Court of Criminal Appeals Ms., supra; White v. Crook, supra.
From the petition allegation Number 6 reads:
“The Respondents have failed to comply with the statutes of the law of the State of Alabama for making the jury roll, preparing a well-bound book of said roll, and filling the jury box of Baldwin County, Alabama, in that they have wilfully, knowingly and intentionally used a method other than that prescribed by law for the making of said Jury roll and the filling of said jury box. They have instead substituted their own system in that they individually and collectively gathered names in a random and unorganized manner and placed the names of various persons on the jury roll and in the jury box. Instead, the Respondents have relied almost entirely upon their subjective decisions as to the names which will be added to the jury roll and placed in the jury box.”
This court recognized in Smith v. State, 54 Ala.App. 561, 310 So.2d 484, that even if there were some irregularities in the actions of the jury commission in filling the jury box, as required by law, the venire is not void in the absence of fraud.
The use of the “key man” system by the Baldwin County Jury Commissioners has not been shown to produce a significant under-representation of any group. Although under-representation alone is not sufficient to show a prima facie case of discrimination, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, the U.S. Supreme Court in Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536, stated that it would offer an opportunity for racial discrimination. In Alexander v. Louisiana, supra, the commissioners had selected names of potential jurors from a variety of sources. Afterwards, they mailed out questionnaires which included a space for indicating the race of a person filling out the questionnaire. When these questionnaires were returned the commissioners selected those people who were either qualified or exempt from service. The Supreme Court in Alexander v. Louisiana, supra, stated that the opportunity to discriminate occurred because the jury commissioners had the ability to invoke such “subjective selection.” The possibility of identifying each potential juror from the information on the questionnaire concerning race provided the factual information on which the “tainted subjective” decision could be based.
No evidence had been produced to show that the jury commission in Baldwin County had an opportunity to discriminate against any group. The commissioners stated that there was no indication on the list or the cards which would demonstrate the race or the sex of the potential juror named.
From the evidence presented during the hearing, it has not been shown that any group had been eliminated by the Baldwin County Jury selection process.
From the petition, allegation Number 7 reads:
“The Clerk of the Jury Commission of Baldwin County, Alabama, under the direction of the Jury Commission, has failed to obtain the name of every citizen of Baldwin County over nineteen (19) years of age and under sixty-five (65) *582 years of age, listing their occupation, place of residence and place of business in such a manner as to obtain a full cross section of the county to compose the jury roll of said county.”
Absent fraud or denial of constitutional rights of the failure to place on the jury roll the name of every qualified person may not be the basis for quashing a venire. Bokulich v. Jury Commission of Greene County, D.C., 298 F.Supp. 181.
We cannot say procedures used by the Baldwin County Jury Commission did not demonstrate that the jury roll was not a cross section of the county. The Supreme Court of the United States in Swain v. Alabama, supra, reads:
“Neither the juiy roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group.
Under the evidence presented by the appellant in this case it was not shown that any group was under-represented or had been consistently omitted from the jury roll. On the contrary, Ms. Blackmon, clerk of the Baldwin County Circuit Court, testified that she had seen black people, women and young people serving on the jury over the years.
From the petition, allegation Number 8 reads:
“The system employed by the Clerk of the Jury Commission to compose the roll of jurors in Baldwin County, Alabama, does not include the unregistered voters of Baldwin County. Thus a substantial segment of the population of said county has been excluded from jury service.”
We recognize that unregistered voters would seem to comprise a segment of a population of any county. Gregg v. Maples, supra. Nonetheless, a system of jury selection utilized by Baldwin County was not shown to have omitted them.
The only significant evidence on this point, came from Ms. Lois Hughes, Clerk of the Jury Commission, and she stated that she did not know whether the names of unregistered voters had been placed on the jury roll.
On the other hand, we have evidence showing that names were gathered from telephone directories, tax assessor’s lists, and tag ownership lists. We are sure that these lists contained names of unregistered voters.
Under these facts, we do not believe that the petitioner has met the burden or proof required of him. Nixon v. State, 291 Ala. 657, 286 So.2d 315.
From the petition, allegation Number 9 reads:
“The system of preparing the jury roll of Baldwin County, Alabama, as employed by the Respondents, excludes a substantial segment of the population in the area by failing to place on the jury roll and in the jury box the names of substantial numbers of women and blacks.”
No figures or statistics are shown in the record which would support this allegation. On the contrary, Ms. Blackmon, Clerk of the Baldwin Circuit Court, testified:
“MR. HENDRIX: By young people, I mean people that you consider to be young, like in their twenties, and so forth — people you might even know their ages.
“A Yes, sir. We have quite a few young people.
“Q Have you seen any black people serving on the jury venire in this county? “A Oh, yes. Plenty.
“Q Since the law went into effect for women to serve on the juries, have you seen many, many, many women called on the jury venires?
“A Yes, sir.”
From the petition, allegation Number 10 reads:
“The roll prepared by the Respondents and the box filled from said roll, comprising the jury roll and the jury box of ' Baldwin County, Alabama, excludes a substantial number of eighteen (18), nineteen (19) and twenty (20) year-old poten *583 tial jurors. Thus, a cross section of the county is not included as potential jurors on the jury roll and in the jury box.”
One must be over the age of nineteen to be eligible for jury service, and eighteen-year-olds are not eligible. § 12-16-43, Code of Alabama 1975 (now § 12-16-60(a)(l) 1978 Supp., Code of Alabama 1975).
As to the exclusion of nineteen and twenty-year-olds, no evidence was presented to support this allegation.
The U.S. Supreme Court in Swain v. Alabama, supra, stated:
“That purposeful discrimination may not be assumed or merely asserted . it must be proven . . . ”
From the petition, allegation Number 11 reads:
“The Respondents have relied almost entirely on personal knowledge and personal contacts in preparing the jury roll. As a result, a substantial majority of the people of Baldwin County, Alabama, have been systematically excluded from jury duty in said county. Further, the Respondents have failed to arrange a jury roll alphabetically by precinct, in numerical order, listing the name of every person qualified to serve upon the jury in Baldwin County, Alabama, along with the occupation, residence and place of business of every person so selected.”
The only significant evidence that we have on this point came in the testimony of Ms. Lois Hughes, Clerk of the Jury Commission. She testified that when new names were added to the jury roll she removed the appropriate page in the jury roll and typed the new names at the bottom of the page. Aside from this, we have not found any evidence in the record concerning this point. This testimony by Ms. Hughes could, or could not, infer that the roll was kept in an alphabetical order.
Although the names on the jury roll did not have designations of precinct that corresponded to the two precincts in Baldwin County, the names on the roll did show designation by beats, which paralleled those beat numbers used by the tax assessor on his list.
We recognize that the purpose of having the precinct number next to every name is so the sheriff can easily locate prospective jurors when their names appear on the ve-nire list of potential jurors. The use of the beat numbers, of which there were fifteen, would make the job of locating these people a less difficult task. Designation by beats is geographically more specific than the úse of precinct numbers.
Under these circumstances, we fail to see how this prejudiced the petitioner in any way, and find substantial compliance. § 12-16-42, Code of Alabama 1975. Also, the evidence showed that the individuals on the roll had listed next to their names, their occupation, residence and place of business.
In Ms. Hughes’ testimony we find the following:
“Q I will ask you to look at that jury roll and tell me whether you can tell the ages of any of the individuals whose names appear on the first page of Precinct Number Four, the page I was reading from a moment ago — Béat Number Four.
“A No, sir, the ages are not on here. “Q The ages are not listed?
“A No, sir.
“Q The occupations — are they not?
“A Yes, sir.
“Q And their residence address?
“A Yes, sir.”
From the petition allegation Number 12 reads:
“The Respondents have failed to purge the roll of jurors in the immediate past to eliminate deceased persons, persons who have departed the county, and persons over the age of sixty-five (65) years. As a result, the jury roll of Baldwin County, Alabama, contains a substantial segment of the population over sixty-five (65) years of age, who have the option to serve or not to serve on the jury. This action has resulted in the jury roll of Baldwin County, Alabama, failing to comprise a cross section of the county.”
*584 There was testimony from Ms. Hughes that the jury commission met four times a year. It was at these meetings that discussions were held on whether or not certain persons were still qualified to serve. She said that, if it was determined they were not qualified to serve, then their names were removed from the list. She testified that, unless the commission became aware that someone on the roll had since been disqualified, the name would remain on the roll. She explained that often the circuit judge or the sheriff would inform her of those persons to be exempted or disqualified.
As far as persons, over sixty-five years of age remaining on the jury roll, we are not aware of any such prohibition in § 12-16-43, Code of Alabama 1975, (nor Act No. 594, Acts of Alabama 1978).
Under the circumstances in this cause, we believe that the jury commission in Baldwin County has sufficiently followed the statute in an effort to carry out the intent for which it was adopted. We believe the facts in the record demonstrate that the purpose of the statute was substantially served. Smith v. State, Court of Criminal Appeals Ms., supra. Although it may be said that the system utilized by Baldwin County was imperfect in many respects, it cannot be said that the jurors did not reflect a cross section of that community.
It is therefore our opinion that the judgment of the Baldwin Circuit Court, in denying the petition for writ of mandamus, should be affirmed.
AFFIRMED.
All the Judges concur.