Robert L. Williams was convicted of selling marijuana, fined $1,500, and sentenced to fifteen years' imprisonment in the penitentiary.
The sufficiency of the state's evidence is not challenged on this appeal.
The appellant contends, initially, that the trial court erred in denying his motion to quash the venire on the ground that the venire was selected from a jury pool which did not comply with Alabama standards for a "fair cross section of the population." See Ala. Code § 12-16-55 (1975). It is undisputed that in Dallas County, pursuant to a federal court order, the jury box is routinely filled with names of qualified persons randomly selected from a master list comprised of names from only the list of registered voters and the list of ad valorem taxpayers (property owners). The appellant argues on appeal that this procedure systematically excludes a substantial segment of the population of Dallas County, "non-registered voters," and, thereby, fails to satisfy the requirements of Alabama law, §§ 12-16-55 to -57, Code of Alabama 1975. Appellant's argument on appeal implies, as he argued at trial, that, in effect, the Dallas County procedure for "filling the jury box" also excludes a disproportionate number of black citizens, who comprise a high percentage of that group of persons who are neither registered voters nor property owners.
The appellant relies on State ex rel. Gregg v. Maples,286 Ala. 274, 239 So.2d 198 (1970), wherein the court held that a jury selection procedure which utilized the county voter registration list as the sole and exclusive source of qualified jurors was a "fraud in law," under the circumstances, because it did not substantially comply with the existing jury selection statutes, statutes which required, on the master jury list, the name of every qualified person in the county. Appellant's reliance on Maples, however, is misplaced because the statutes applicable in Maples have been repealed and replaced by §§ 12-16-55 to -57.
The Dallas County procedure, utilizing both the voter registration list and the ad valorem taxpayer list does not violate current Alabama law. See, Wesley v. State,424 So.2d 648 (Ala.Cr.App. 1982); see also, Lopez v. State,415 So.2d 1204 (Ala.Cr.App. 1982). Both Wesley and Lopez dealt with the validity of jury selection procedures under the current statutes. In Lopez the court upheld a procedure in Etowah County which utilized the driver's license list as its sole source of qualified jurors for the master jury list. In Wesley
the court, likewise, upheld a Tuscaloosa County procedure which utilized only the voter registration list. In distinguishingMaples, the Wesley court held that, although such a procedure violated the former statutes which required the jury commission to place on the jury roll the name *Page 369 
of every qualified, and non-exempt, person, the use of a voter registration list did not "constitute a prima facie violation" of the new statutes which focus on the § 12-16-55 policy "that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court." (Emphasis added.)
As in Wesley and Lopez, the Dallas County procedure utilizes sources, "registered voters" and "persons listing property for ad valorem taxation," which are expressly recommended in §12-16-57 as sources for names of persons to be included on the master jury list to foster the "fair cross section" policy of §12-16-55. Furthermore, the exclusion of that group of persons who are neither "registered voters" nor "persons listing property for ad valorem taxation" does not violate the policy of § 12-16-56, which proscribes the exclusion of a person "on account of race, color, religion, sex, national origin or economic status."
The Dallas County procedure, therefore, substantially complies with current Alabama law, even though it does not attempt to locate, for jury duty, every qualified person. As the court in Lopez v. State, supra, stated:
 "The law in Alabama does not require, literally, that every qualified person's name be placed on the rolls or in the box. Mitchell v. Johnson, 250 F. Supp. 117
(M.D.Ala. 1966). Failure to include the name of every qualified person on the jury roll is not a ground to quash an indictment or venire, absent fraud or purposeful discrimination. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)."
Although the appellant does not expressly raise any constitutional issues, we note that the current statutory "fair cross section" requirement is analogous to the constitutional requirement. It is well settled that fraud or purposeful discrimination that results in the systematic exclusion, from jury service, of distinctive groups in a community might constitute a violation of a defendant's Sixth Amendment right to a trial by a jury composed of a fair cross section of the community. Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664,668, 58 L.Ed.2d 579 (1979); Wesley v. State, supra. It is the defendant's burden to demonstrate this constitutional violation by showing: "(1) that the group alleged to be excluded is a `distinctive group' in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the jury selection process."Duren v. Missouri, supra.
Appellant's proof tended to show that most "non-registered voters" were not "property owners" and that, consequently, the Dallas County procedure systematically excluded "non-registered voters." This evidence did not demonstrate a violation of the "fair cross section" requirement because "non-registered voters" do not constitute a "distinctive group" in the community. Wesley v. State, supra. The first prong of the Duren
test was, therefore, not satisfied. And, of course, those "non-registered voters" who are on the ad valorem taxpayer listare included on the master jury list.
Although the appellant offered some evidence that a disproportionate number of black citizens are neither "registered voters" nor "property owners," he presented no evidence of fraud or purposeful discrimination against black citizens and no evidence of either underrepresentation of blacks on Dallas County venires (or the particular venire from which his jury was drawn) or systematic exclusion of blacks due to the Dallas County procedure.
For the foregoing reasons the trial court did not err in denying appellant's motion to quash the venire.
In oral argument before this court, the appellant conceded that he never filed a written motion to quash the venire. The state points out that, because of this failure to file a written motion, we are not required to review this issue.Williamson *Page 370 v. State, 52 Ala. App. 617, 296 So.2d 241 (1974); Chambliss v.State, 373 So.2d 1185 (Ala.Cr.App.), cert. denied,373 So.2d 1211 (Ala. 1979). Nevertheless, we did so because, despite any procedural defects with respect to appellant's motion, the trial court heard the motion and the testimony in support thereof, and expressly overruled it. The legality of the Dallas County procedure for "filling the jury box" was, therefore, adequately brought to the attention of the trial court, and, under these circumstances, sufficiently preserved for our review.
The appellant also moved to quash the venire because, at some point during its organization, but before any particular case was called for trial, a prospective juror, after learning that he would be serving for a "criminal" docket, commented, "let's hang `em up high." The trial court conducted a hearing on this motion and concluded that the comment was made in a joking manner and that it was not prejudicial to the appellant. We agree. The comment should not have been made, but it was said in jest and was not made in reference to the appellant. Neither the prospective juror who made the comment nor the only prospective juror who remembered hearing the comment served on appellant's jury. For these reasons the trial court's refusal to quash the venire on this ground was not reversible error.
Tyrone Anderson, an undercover agent with the Drug Division Unit of the Alabama Department of Public Safety, described the incident that led to appellant's arrest and identified the appellant, at trial, as the person who sold him some marijuana. On cross-examination the appellant attempted to discredit Anderson's testimony, implying, among other things, misidentification of the appellant. Anderson was subsequently recalled by the state, at which time he testified withoutobjection that before he purchased the marijuana from the appellant, he had had a conversation with William Duke, a narcotics officer with the Dallas County Sheriff's Department, at which time Duke had given him a photograph of the appellant to help him, Anderson, identify the appellant during the undercover operation. Anderson then produced the photograph that Duke had shown him. The photograph was admitted into evidence over appellant's objection but only after the lower portion had been removed, leaving only the frontal and profile views of the appellant's face with a height chart in the background. Appellant's request for a voir dire examination of Anderson before the photograph was admitted was denied.
On appeal, the appellant claims that the photograph was a "mug shot" and was, therefore, inadmissible because it evidenced a prior offense committed by, or a prior arrest of, the appellant. At trial he objected "on the ground that the District Attorney is trying to boost the testimony of his own witness." Because the specific ground raised at trial waived all other grounds, the issue raised on appeal was not properly preserved for our review. Howell v. State, 369 So.2d 297
(Ala.Cr.App. 1978), cert. denied, 369 So.2d 303 (Ala. 1979);Dorsey v. State, 406 So.2d 457 (Ala.Cr.App. 1981).
We do note, however, that before the photograph was presented, Anderson had testified, without objection, that he had obtained the photograph from a "narcotics" officer with the sheriff's department. Consequently, the photograph itself, in its "doctored" state, arguably, did not contribute any prejudicial implications that were not already inferred by Anderson's unchallenged testimony. See, Williamson v. State,384 So.2d 1224, 1229 (Ala.Cr.App. 1980). Such cumulative evidence would not constitute reversible error in this instance. A.R.A.P. 45; see, Hayes v. State, 395 So.2d 127, 147
(Ala.Cr.App. 1980), cert. denied, 395 So.2d 150 (Ala. 1981). Of course, the use at trial of true "mug shots" with police identification labels should be, generally, avoided because of the inherent prejudicial nature of such photographs. Gross v.State, 395 So.2d 485 (Ala.Cr.App. 1981), and cases cited therein; see, Williamson v. State, supra (thorough analysis for *Page 371 
determining when the admission of "mug shots" constitutes reversible error).
The trial court's denial of appellant's motion for a voir dire examination of Anderson before the photograph was admitted, likewise, did not constitute reversible error under these circumstances. Anderson had already identified the photograph as the one Duke had given him and had stated that it was in substantially the same condition, in its "undoctored" state, as it was when Duke gave it to him. There had been no contention that the photograph had been, in any way, "tampered with" or altered between the time Anderson received it and trial, or that it was prejudicial "on its face." Officer Duke subsequently identified the same photograph as the one that he had given Anderson. Any defects in the predicate for the admissibility of the photograph were cured by Duke's testimony.
The granting of a request by one party to conduct a voir dire examination of a witness during the direct examination of that witness by the other party is a matter properly left to the discretion of the trial court, unless there has been a clear abuse of that discretion. Chambers v. State, 352 So.2d 21
(Ala.Cr.App.), cert. denied, 352 So.2d 25 (Ala. 1977); Sheltonv. State, 384 So.2d 869 (Ala.Cr.App.), cert. denied,384 So.2d 871 (Ala. 1980); Matthews v. State, 401 So.2d 241
(Ala.Cr.App.), cert. denied, 401 So.2d 248 (Ala. 1981); Sandersv. State, 426 So.2d 497 (Ala.Cr.App. 1982). In light of the predicate that had been established and the only grounds of objection that had been raised by the appellant, the trial court's refusal to allow the requested voir dire examination was not an abuse of discretion, and it was not reversible error.
The appellant further complains that certain questions and answers during the prosecutor's cross-examination of Armiteene Williams, appellant's grandmother, impermissibly referenced a prior offense and, therefore, constituted reversible error. We have reviewed appellant's arguments in light of the record and have concluded that no reference to a prior offense was made. The witness was asked if Officer Duke had been to her home on an occasion prior to the instant offense to see the appellant, and she answered over appellant's objection, "No, not as I knowed [sic]." The trial court's rulings concerning this cross-examination of appellant's grandmother, therefore, did not constitute reversible error.
Having found no errors warranting a reversal of this cause, we hereby affirm appellant's conviction and sentence below.
AFFIRMED.
All the Judges concur.