BEATTY, Justice
(concurring specially).
I concur in the decision to quash the writ in this case on the grand jury issue and to invite the legislature’s attention to that issue in the event that body wishes to reexamine the federal rule adopted by the Court of Criminal Appeals in its opinion in this case.
Based on the following analysis, I also concur in the decision to quash the writ in this case as to the issue concerning the propriety of the practice in Montgomery County of drawing the master juror list exclusively from the list of persons registered to vote in that county. This issue raises the question of the precedential value of State ex rel. Gregg v. Maples, 286 Ala. 274, 239 So.2d 198 (1970), in view of the 1978 revisions to the juror qualification and selection statutes, a question that has not been expressly addressed by this Court. I recognize that on the face of its decisions in Wesley v. State, 424 So.2d 648 (Ala.Crim.App.1982), and Sanders v. State, 426 So.2d 497 (Ala.Crim.App.1982), it would appear that the question has been squarely decided by the Court of Criminal Appeals. Nevertheless, I will examine the efficacy of that court’s analysis of the issue and its reasoning in resolving the issues.
At the outset, I note that the Court of Criminal Appeals held that petitioner’s objection to the jury list, drawn solely from the list of registered voters, was made too late because he “did not object to the make *789 up of the master jury list until a month and a half after his plea of not guilty [but apparently his objection was made before trial],” citing Sanders v. State, supra. However, under this Court’s decision in Williams v. State, 342 So.2d 1328, 1330 (Ala.1977), petitioner’s “proper objection to the composition of a grand or petit jury, including, but not limited to, the constitutional ground of the jury selection process [would be timely if made] before entering upon the trial of the case on its merits.” See also Kittle v. State, 362 So.2d 1271, 1273 (Ala.1978), and Brown v. Billy Marlar Chevrolet, Inc., 381 So.2d 19Í (Ala.1980). Accordingly, petitioner’s objection was timely.
I wish to emphasize that the issue here is not whether it is constitutionally permissible in Alabama to compile a master jury list solely and exclusively from the list of registered voters. In the clear majority of jurisdictions, including the federal courts, which have considered the constitutional question, it has been held that use of voter registration lists as the source of names for prospective jurors meets the constitutional requirement that a jury list reflect a cross section of the community, unless there is a showing that the voter registration lists do not, in fact, represent a fair cross section of the community. See generally, Annot., 80 A.L.R.3d 869 (1977). Rather, the issue to be decided here is whether the exclusive use of the voter registration list as the sole source of prospective jurors is permissible under Alabama’s statutory requirements for the selection of jurors.
Because the same question was decided by this Court in State ex rel. Gregg v. Maples, supra, my analysis begins with that case and the jury selection statutes in effect at the time of that decision. The statutory provisions found to be controlling of the issue in Gregg were Code of 1940 (Recomp.1958), Title 30, §§ 18, 20, 21, and 24, set out in pertinent part below:
“§ 18. The clerk of the jury commission shall, under the direction of the jury commission obtain the name of every citizen of the county over twenty-one and under sixty-five years of age and their occupation, place of residence and place of business, and shall perform all such other duties required of him by law under the direction of the jury commission.
[[Image here]]
“§ 20. The jury commission shall ... make in a well-bound book a roll containing the name of every citizen living in the county who possesses the qualifications herein prescribed and who is not exempted by law from serving on juries.
“§ 21. The jury commission shall place on the jury roll and in the jury box the names of all citizens of the county who are generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgment; but no person must be selected who is under twenty-one or who is an habitual drunkard, or who, being afflicted with a permanent disease or physical weakness is unfit to discharge the duties of a juror; or cannot read English or who has ever been convicted of any offense involving moral turpitude....
[[Image here]]
“§ 24. The jury commission is charged with the duty of seeing that the name of every person possessing the qualifications prescribed in this chapter to serve as a juror and not exempted by law from jury duty, is placed on the jury roll and in the jury box.... The jury commission shall require the clerk of the commission to scan the registration lists, the lists returned to the tax assessor, any city directories, telephone directories and any and every other source of information from which he may obtain information and to visit every precinct at least once a year to enable the jury commission to properly perform the duties required of it by this chapter.” (Emphasis added.)
At issue in State ex rel. Gregg was the Madison County “Jury Refilling and Reorganization Plan,” which required that the names of persons placed on the jury roll in Madison County also appear on the registration records or lists as registered voters *790 of that county. Construing this plan under the juror selection statutes quoted above, this Court held that the plan “is a radical departure from the statutory system enacted by the legislature of this state, which system applies to Madison County, and is repugnant to so many aspects of that system as to constitute a usurpation of the authority of the legislature.” 286 Ala. at 278, 239 So.2d at 201. The Court reasoned as follows:
“The purpose of §§ 18, 20 and 24 of Title 30 is ‘to protect litigants and to insure a fair trial by an impartial jury.’ And ‘substantial compliance with these requirements is necessary in order to safeguard the administration of justice.’ Inter-Ocean Cas. Co. v. Banks, 32 Ala. App. 225, 227, 23 So.2d 874, 875.
“Some of the opinions wherein the aforementioned statutes are construed were written in recent cases, in which the appellants complained of the systematic exclusion of Negroes from juries in Alabama. In Fikes v. State, 263 Ala. 89, 81 So.2d 303, it was held that the evidence at a hearing on a motion to quash did not support a finding that Negroes were systematically omitted from the jury roll. This Court in Fikes, supra, said that ‘[tjhere is no legal reason for quashing an indictment or venire simply because the jury commission did not put the name of every qualified person on the roll or in the jury box, in the absence of fraud (or a denial of constitutional rights).’ (263 Ala. 95, 81 So.2d 309) Bell v. Terry, 213 Ala. 160, 104 So. 336; Wimbush v. State, 237 Ala. 153, 186 So. 145.
“That statement of law was recognized by two federal decisions in granting in-junctive relief to Negroes, but the court went on to say that ‘the law does require that the jury commissioners do not place so few names in the jury box as not to obtain a full cross-section of the county.’ Mitchell v. Johnson, 250 F.Supp. 117 (M.D.Ala., 1966); White v. Crook, 251 F.Supp. 401 (M.D.Ala., 1966).
“In the Mitchell case, supra, the court said that ‘the purpose of the Alabama statutes is to insure at least a reasonable approximation to the requirements that jury venires include all qualified persons, and, hence, represent a cross-section of the community, with no significant groups being excluded without justifiable reasons; therefore, the procedures outlined by the Alabama statutes can and do serve * * * as a standard by which the actions of the jury commissioners can and should be judged.’ 250 F.Supp. at p. 122. And that the ‘sole purpose of these requirements is to insure that the jury commissioners will have as complete a list as possible of names, compiled on an objective basis, from which to select qualified jurors.’ 250 F.Supp. at p. 123.
“In Bokulich v. Jury Commission of Greene County, 298 F.Supp. 181 (N.D.Ala., 1968), the court summarized the present position of the law as to these statutes, stating:
“ ‘Failure to put on the roll the name of every qualified person may not be the basis for quashing an indictment or venire absent fraud or denial of constitutional rights [citing Fikes], but substantial compliance with these legislative safeguards established to protect litigants and to insure a fair trial by an impartial jury is necessary in order to safeguard the administration of justice. [citing Inter-Ocean, supra].’ 298 F.Supp., 186-187.
“The appellees argue that the ‘Plan’ provides for substantial compliance with the statutes in that names gotten from the voter registration lists would provide an adequate cross-section of the county. They cite United States v. Greenberg, 200 F.Supp. 382 (S.D.N.Y., 1961), in support of this theory. While it is correct that the court in that case held a grand jury was properly impanelled even though the names comprising the panel were drawn from lists of persons registered to vote, the case is not in point here. In Greenberg, supra, the court was discussing the selection of a federal jury and was concerned solely with the federal procedure. The court in that case said as follows:
“ ‘Congress has not chosen to establish any uniform system of selecting *791 the array of qualified jurors from which grand and petit juries are to be drawn. There is no prescribed method of selection. Congress has established uniform qualifications for individual jurors but it has left to each district the adoption of suitable methods to obtain the necessary talesmen.’ 200 F.Supp., 388.
“The opinion in Greenberg quotes from Padgett v. Buxton-Smith Mercantile Co., 283 F.2d 597, 598 (10 Cir., 1960), cert. denied, 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 705, as follows: ‘Neither statutory nor case-made law requires the use of any particular source of names so long as there is no systematic exclusion of the members of any race, creed, social or economic group.’ [Footnote omitted.] In the present case, we are to some extent dealing with a discretionary matter, but with a system of selection which the legislature has specifically provided and with which the jury commission must substantially comply.
“Unregistered voters would seem, in the absence of statistics to the contrary, to comprise a substantial segment of the population of any area. And such a system of jury selection which omitted them would not substantially comply with the statutes in Alabama, nor would such a procedure insure the jury commission as complete a list as possible. Mitchell v. Johnson, supra.
“Further, the appellees’ reliance on the Fikes decision, supra, that a venire need not be quashed on the ground that the name of every qualified juror is not on the jury roll is without merit. That decision is qualified by the caveat, ‘in the absence of fraud.’ Fraud used in this sense has been construed as encompassing more than criminal wiles: ‘Fraud is a relative term, it includes all acts and omissions which involve a breach of legal duty injurious to others.’ Inter-Ocean Cas. Co. v. Banks, supra. And it has been held that ‘When it affirmatively appears that the names of a large number of citizens who possess the qualifications required by law of jurors, are intentionally omitted from the jury roll * * * that is a fraud in law that requires the quashing of a venire * * *. It is not the kind of a jury box contemplated by law. Our Statutes do not contemplate * * * any system or scheme of selecting other than the selection of names authorized by law * * *. ’ 32 Ala.App. at p. 227, 23 So.2d at p. 875, citing Doss v. State, 220 Ala. 30, 123 So. 231.
“In view of the foregoing, we hold that the trial court erred in vacating the alternative writ of mandamus and in denying the peremptory writ of mandamus.”
(Emphasis added.) 286 Ala. at 279-80, 239 So.2d at 201-03.
In 1978, the legislature repealed, among others, the juror selection statutes this Court found to be controlling in State ex rel. Gregg and enacted a revised statutory scheme for the qualification and selection of jurors generally, Code of 1975, § 12-16-55, et seq. The two provisions enacted in 1978 that are pertinent to this case are § 12-16-55, declaring the juror selection policy of this state, and § 12-16-57(a), providing for the compilation of a master list. These provisions are set out below:
“§ 12-16-55. It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this article, to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose.
[[Image here]]
“§ 12-16-57.
“(a) The jury commission for each county shall compile and maintain an alphabetical master list of all persons in the county who may be called for jury duty, with their addresses and any other necessary identifying information. This list may include all registered voters, persons holding drivers’ licenses and registering motor vehicles, and may include other lists, such as lists of utility customers and persons listing property *792 for ad valorem taxation, which will include persons whose listing will foster the policy and protect the rights provided in sections 12-16-55 and 12-16-56. The list shall avoid duplication of names. The list shall be reviewed and corrected and new names added from time to time, but at least once every four years.” (Emphasis added.)
It is clear from reading the provisions of § 12-16-57, which incorporate those of § 12-16-55, that under the revised statutory scheme, the jury commissions of this state are still charged with the general duty of seeing to it that “all qualified persons [in their respective counties] have the opportunity for jury service” by compiling a master list of all such persons. This general duty is parallel to that which existed under the old scheme, specifically, Title 30, §§ 21 and 24, supra. However, what is noticeably missing from the new scheme is the specific duty enumerated within Title 30, § 24, which mandated that “[t]he jury commission ... require the clerk of the commission to scan the registration lists, the lists returned to the tax assessor, any city directories, telephone directories, and any and every source of information from which he may obtain information.” (Emphasis added.) Thus, it was the proven failure of the Madison County jury commission (as evidenced by the terms of its “plan”) to comply with this specific mandate of § 24, that constituted the fraud in law in State ex rel. Gregg, supra. In that case, the Court quoted § 24 and then stated: “Despite the provisions of § 24, Title 30, supra, the ‘Plan’ says to the jury commission that it may only consider the names of the persons who appear on the registration lists or records of the county.” I do not read the specifications of § 12-16-57 as a parallel to the § 24 specific mandate; rather, § 12-16-57 sets out the sources the jury commission may use in fulfilling its general duty to compile a “master list of all persons in the county who may be called for jury duty.” (Emphasis added.)
Thus, I agree that, because the specific mandate of § 24 has been eliminated from the current statutory scheme, the current jury commissions are not required to use every list enumerated in § 12-16-57, whether or not such use is necessary to enable the jury commissions to fulfill their general duty of compiling a master list that fosters the policy of § 12-16-55. However, I disagree with the rationale of the Court of Criminal Appeals in Wesley v. State, supra, and Sanders v. State, supra, in which that court disregarded completely the second portion of the policy stated in § 12-16-55 and construed the current statutory scheme as requiring only that jury commissions in this state compile master lists which reflect a fair cross section of the population. This fair cross section requirement is indeed the first part of the policy stated in § 12-16-55, and comports with the minimum requirements under the Sixth Amendment to the United States Constitution. It is not, however, the only policy stated in § 12-16-55; that section also states the additional policy that “all qualified citizens have the opportunity to be considered for jury service in this state.” It may very well be that, while the use of the voter registration list as the sole source of names for the master list meets the fair cross section requirement, that exclusive use may not comport with the policy of this slate and the concomitant duty of the jury commission under §§ 12-16-55 and -57 to compile a list of “all qualified citizens.” However, it may also be true that, in a given county, exclusive use of the voter registration list would comport with this policy because in that county, the voter registration list, in fact, included all or substantially all of the qualified residents of that county. For this reason, I cannot conclude that the exclusive use of the voter registration list in any county constitutes a fraud in law authorizing the quashing of a venire drawn from that list. In contradistinction, because of the language of the juror selection statutes in effect at the time of this Court’s decision in State ex rel. Gregg, we could reach such a conclusion in that case.
The petitioner in this case has adduced no evidence establishing that the exclusive use of the voter registration list by the jury *793 commission in Montgomery County amounts to a failure to comply with that commission’s statutory duty to compile a master list of “all [or substantially all] persons in the county who may be called for jury duty.” Section 12-16-57, supra. For that reason, I agree with the result of the decision below on that issue.